**HILL & SANDERS, Inc., a corporation, Appellant,**

v.

**George E. KENEIPP, Director of Vehicles and Traffic, and the District of Columbia, a municipal corporation, Appellees.**

No. 1541.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 4, 1954.

Decided Nov. 10, 1954.

[1] Code 1951, Supp. II, 11–956.

Louis H. Mann, Washington, D. C., with whom Guy, Mann & Guy, Washington, D. C., was on the brief, for appellant.

Harry L. Walker, Asst. Corp. Counsel, Washington, D. C., with whom Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, Washington, D. C., and Henry Breckenridge Vance, Asst. Corp. Counsel, were on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The case before us involves the right of a garage keeper to claim a lien for storage against an automobile which an owner had first entrusted to him for repairs and then abandoned. It also involves another question, new in this jurisdiction, as to the extent of the authority of the District of Columbia Government through its Director of Vehicles and Traffic to approve or disapprove garage keepers' liens and the subject matter thereof.

The facts are undisputed, the case being here on appeal from a judgment of the trial court dismissing the garage keeper's complaint. That complaint recited that in December 1952 a man named Graham requested plaintiff to tow his car in for repairs; that Graham knew that the work would take only a short time and that it was in fact completed in two days; that defendant was repeatedly notified to pay the charges and get his car, and repeatedly promised to do so but never did. The complaint further recited that plaintiff gave defendant formal notice of its garage keeper's

1. Graham was named as a defendant in the suit, but was not served with process and made no appearance in the cause.

lien and advertised the vehicle for sale at auction; that Graham did not attend the sale; and that plaintiff was the only bidder and bought the car in. The complaint further recited that plaintiff had applied to the Director of Vehicles and Traffic for a title certificate, which was refused. Plaintiff asked the court for an order declaring it to be the owner of the automobile and requiring defendants to issue a certificate of title thereon.[1] The District moved to dismiss on the ground that plaintiff had failed to comply with the lien statute, because in its notice to Graham it had included a claim for storage. The motion was granted and the case is here on the garage keeper's appeal.

1. Did the garage keeper have a lien for storage charges? Congress has provided that: "All persons storing, repairing, or furnishing supplies * * * shall have a lien for their agreed or reasonable charges for such storage, repairs, and supplies * * *. Before enforcing such lien, notice in writing shall be given to the title holder * * *. Such notice * * * shall state that a lien is claimed for the charges therein set forth or thereto attached * * *. There shall be incorporated in or attached to said notice a statement of particulars of the charge or charges for which a lien is claimed, to which may be added a claim for storage of the vehicle from the date of said notice to the date of payment or sale * * *." Code, 1951, Supp. II, § 38-205. The statute spells out the steps to be taken by the garage keeper to perfect his lien and sell the automobile.

The District says that the statute does not authorize a garage keeper to "accept an automobile for repairs, and, thereafter, become entitled to a lien for storage * * *," and that the garage keeper could not have a lien for storage for the period from the date the repairs were completed until the notice of intention to claim a lien was given to the owner.

Thus, the defendants were the District of Columbia, and the Director of Vehicles and Traffic.

■ In our opinion, this position cannot be supported either by the test of logic or by a reasonable reading of the statute. Congress did not say that a garage keeper's lien for storage charges can only be predicated on an express contract of storage. The section above quoted refers to agreed or *reasonable charges* for such storage, repairs and supplies "when such charges are incurred by an owner * * *." The words "or reasonable" must mean that storage charges may be based on *quantum meruit* when there has been no express agreement for a fixed rate. Appellee contends for the rule announced in Gotham Credit Corp. v. A & H Service Station, Inc., Sup., 120 N. Y.S.2d 749, to the effect that the repairman cannot claim storage charges unless there has been a specific agreement to pay storage. We cannot adopt a ruling so unrealistic. We hold that a charge for storage, like almost any other debt, may be "incurred" by implied agreement as effectively as by an express promise to pay. Or to use more accurate terminology, what we have here is a quasi contract, based on an obligation created by law for reasons of justice. Williston on Contracts, Vol. 1, § 3 (Revised edition); Restatement, Contracts, § 5. See also Shoemaker v. Marcum, Mo. App., 9 S.W.2d 863; Nelson v. McKeown, 203 Ill.App. 231. The owner Graham contracted with the garage keeper for a small repair job which took two days and then despite repeated promises to call for the car left it in the hands of the garage keeper who was required to provide valuable space for its storage. We think there is no escaping the conclusion that this created a quasi contract or a promise implied in law to pay for such storage. The obligation to pay being so clear, there is no basis for denying it recognition under the lien statute here involved.

■■ It is true that appellant did not give notice of lien until some six months after the repair job and that under the statute it could have done so after thirty days. But it cannot be said as a matter of law that by indulging the customer for that period and relying on his promises to claim the automobile appellant lost its lien, or its right to claim storage. There would have to be more of an evidentiary showing than this bare recital in the pleadings to justify such a holding. The statute says that a claim for storage may be added to the "statement of particulars". That can only mean that such claim may cover storage charges for the period after the notice is given, for which, the period being uncertain, no exact charge can be stated in advance.

2. The second question is whether the Director of Vehicles had authority to disapprove the lien or the claim on which it was based. Appellant says that the only authority the director had with reference to claimed liens was to see that the lienor had taken the steps prescribed by law, such as giving registered mail notice and publishing advertisements, and that he had no right to pass judgment on the validity of the items constituting plaintiff's claim.

The statute says nothing concerning the power or functions of the director in situations like this; indeed, it does not even mention him or his office. The Corporation Counsel relies on a statement in a Senate committee report, quoting from a letter of the President of the D. C. Bar Association as follows: "It is believed that the notice provisions of the proposed bill substantially eliminate the danger of abuses, particularly since the Director of Vehicles and Traffic would, of course, require evidence of compliance with law before issuing a title to the purchaser at such a sale." [2]

■ We are clear in our view that this language did not indicate an intent to vest the director with judicial powers. It is not his function to preside over adversary proceedings or to adjudicate the validity or reasonableness of garage keepers' claims. We can only conclude that his sole function

2. Sen.Rep. No. 736 to accompany S. 1342, 82d Cong., 1st Sess. (1951); the same excerpt is to be found in H.R.Rep. No. 1936 to accompany S. 1342, 82d Cong., 2d Sess. (1952).

under this statute is to satisfy himself that the lienor has taken the prescribed statutory steps in connection with the sale of a vehicle. In the sentence we have just quoted it is said, "the notice provisions of the proposed bill substantially eliminate the danger of abuses," and we rule that it is to those provisions that his authority, and sphere of inquiry must be limited. When these provisions are shown to have been complied with we think the director has no right to withhold issuance of a title certificate.

The Corporation Counsel says: "If appellant's argument were correct under statute here involved, all a lien holder need do is to mail notice, advertise the sale, claim a lien for whatever he pleased, and summarily sell the car." We see no reason for this apprehension. The Act prescribed the method of application of the proceeds of a sale, including payment to the owner of any surplus realized from the sale, and also provides, "Any person selling such property in order to satisfy a fraudulent, excessive, or unreasonable lien shall be guilty of a conversion of such property and liable to the owner in damages therefor." This gives assurance that an unscrupulous garage keeper is to be held answerable for his misdeeds—in the courts. And wholly apart from the statute, we have no doubt that if an owner were sued for a claimed deficiency he would have the right to defend on the ground that any or all of the items claimed were unreasonable or excessive, or otherwise not recoverable.

Reversed, with instructions to require the issuance of a certificate of title to appellant.