HENDRICKSON & SONS MOTOR CO. *v*. MICHAEL V. OSHA AND GENERAL MOTORS CORPORATION.

[No. 1-374A44. Filed July 30, 1975. Rehearing denied September 8, 1975. Transfer denied March 29, 1976.]

188

*Donald G. Hendrickson,* of Boonville, for appellant.

*Ronald Warrum,* of Evansville, *S. Anthony Long,* of Boonville, for appellee Osha; *Robert H. Hahn, George A. Porch,* of Evansville, *Bamberger, Foreman, Oswald and Hahn,* of counsel, of Evansville, for appellee General Motors Corporation.

LYBROOK, J.—The instant litigation stems from a dispute between the purchaser of an automobile and its seller and manufacturer concerning the applicability of a written new car warranty agreement to certain labor and repair work performed by the seller at its place of business. The evi-

dentiary and procedural facts necessary to form an understanding of the issues presented by this appeal are as follows:

On November 2, 1968, plaintiff-appellee Michael V. Osha purchased from defendant-appellant Hendrickson & Sons Motor Co. (Hendrickson) a new 1969 model Chevrolet automobile manufactured by defendant-appellee General Motors Corporation (GM). By written agreement, the automobile was, with certain exclusions and limitations, warranted to be free from defects in material and workmanship for twelve months from the date of delivery or until it had been driven twelve thousand miles, whichever first occurred. With respect to power train components, warranty coverage continued until the expiration of five years or until the automobile was driven fifty thousand miles, whichever first occurred.

The controversy in the case at bar revolves around costs for parts and labor furnished by Hendrickson at Osha's request on five separate occasions. Osha was billed by Hendrickson for the work performed on each of these occasions. No payments had been remitted by Osha as of the date of trial. A summary of the parts and labor furnished and the charges therefor is as follows:

(1) May 8, 1969, repl. right rear brake linings and drum. _____ $ 35.01

(2) May 21, 1969, repl. exhaust system; repair brake line. (Odometer reading noted on repair order—15,673 miles). _____ 58.18

(3) August 11, 1969, clutch repair. _____ 81.87

(4) August 25, 1969, repl. Shock absorber. _____ 14.78

(5) December 29, 1969, remove engine and inspect internal parts. _____ 54.00

Total _____ $243.84

Following removal of the automobile's engine on the last of the above listed occasions, a representative of GM inspected damaged internal parts. GM declined warranty coverage for

repair of the engine, taking the position that the damage had not resulted from any defect in material or workmanship but had been caused by alterations and abuse by Osha. When Osha failed to authorize repair at his own expense, Hendrickson retained possession of the automobile in its disassembled state and continued to seek payment from Osha for all of the above listed amounts.

On May 25, 1972, Osha brought suit against Hendrickson and GM seeking damages for breach of warranty,[1] conversion and negligent injury to personal property. Examination of the pre-trial order, various stipulations entered into during the course of the litigation, and plaintiff's evidence reveals that, for reasons not disclosed by the record, Osha did not consider Hendrickson to be a warrantor on the written warranty agreement and that his claim of breach of warranty was directed solely to GM. Further, Osha stipulated with GM that the only issue between them was the warrantability of the damage to internal engine parts discovered on December 29, 1969. Osha further stipulated that he was asserting no warranty claim against GM for repairs performed on occasions (1), (2), (3) and (4) listed above. Likewise, the record reveals that Osha's claim for conversion and negligent injury was directed solely to Hendrickson and was based upon the alleged unlawful retention of the automobile since December 29, 1969, and alleged physical damage and loss sustained by the automobile while in Hendrickson's possession.

Hendrickson denied the material allegations of Osha's complaint and counterclaimed seeking judgment for all of the above listed charges for work performed upon the automobile. Hendrickson further asserted a possessory lien for the value of labor performed on occasion (5) and sought a judgment of foreclosure. Hendrickson also claimed storage charges of one dollar per day from December 29, 1969. During trial, Osha

---

1. Examination of the pleadings, pre-trial order, and evidence adduced at trial reveals that Osha's warranty claim is founded upon the alleged breach of the express written warranty agreement. No claim or issue with respect to breach of implied warranties, if any, is presented. See, IC 1971, 26-1-2-314, 315 (Burns Code Ed.).

and Hendrickson stipulated before the jury that the parts and labor performed on occasions (1), (3) and (4) were not covered by the express warranty. However, Osha asserted warranty as a defense to Hendrickson's counterclaim with respect to parts and labor furnished on occasions (2) and (5).[2]

GM defended Osha's warranty claim on the grounds that the damage to the internal parts of the engine was caused by alteration and abuse by Osha rather than any defect in material or workmanship.

On the fifth day of trial, the cause was submitted to the jury which returned verdicts leaving the parties in effectively the same positions in which they stood prior to trial. On Osha's claim against GM, it found in favor of GM. On Osha's claim against Hendrickson, it found in favor of Osha and against Hendrickson in the sum of $1210.00. On Hendrickson's counterclaim, the jury found in favor of Hendrickson and against Osha in the sum of $1210.00.

Thereafter, Osha moved for judgment on the jury's verdict in his favor on his claim against Hendrickson and moved for judgment on the evidence on Hendrickson's counterclaim. Likewise, Hendrickson moved for judgment on the jury's verdict in its favor on its counterclaim against Osha and moved for judgment on the evidence on Osha's claim.

Following argument on the various motions, the trial judge entered the following findings:

"(1) Plaintiff's motion for judgment on the verdict in the amount of One Thousand Two Hundred Ten Dollars ($1,210.00) plus costs in favor of plaintiff and against Hendrickson should be granted, and judgment should be rendered in that amount.

(2) Plaintiff's motion for judgment on the evidence as to the verdict in favor of Hendrickson and against the plaintiff should be granted to the extent the verdict is not supported by the evidence, is contrary to the evidence and the law, and

---

2. We note an apparent inconsistency between Osha's assertion of warranty as a defense to Hendrickson's claim for repairs performed on occasion (2) and Osha's stipulation with GM that the only issue between them was the warrantability of damage to internal engine parts discovered on occasion (5).

is excessive, and judgment should be rendered in the amount of Two Hundred Forty-three Dollars and Eighty-four Cents ($243.84) for Hendrickson & Sons Motor Co. against the plaintiff on Hendrickson's counterclaim. Hendrickson & Sons Motor Co. should hereafter be the owner of the 1969 Chevrolet automobile now in its possession.

(3) All other pending motions should be overruled.

(4) The Court should render judgment on the verdict against plaintiff on its own motion on plaintiff's claim against General Motors Corporation."

The court then entered judgment pursuant to the above findings. Thereafter, Hendrickson filed its motion to correct errors which was overruled.

In this appeal, Hendrickson presents the following issues for review:

(1) Whether the trial court erred in allowing the testimony of a witness called on behalf of Osha whose name did not appear on the lists of witnesses contained in the pre-trial order.

(2) Whether the trial court erred in admitting into evidence certain exhibits offered by Osha.

(3) Whether the trial court erred in permitting Osha's testimony concerning the substance of a certain telephone conversation with a third party.

(4) Whether the trial court erred in refusing certain of Hendrickson's tendered instructions.

(5) Whether the trial court erred in giving over objection certain of Osha's tendered instructions.

(6) Whether the trial court erred in overruling Hendrickson's motions for judgment on the evidence on Osha's claim made at the close of plaintiff's evidence and at the close of all the evidence.

(7) Whether the trial court erred in granting in part Osha's motion for judgment on the evidence and overruling Hendrickson's motion for judgment on the evidence, which motions were made subsequent to the verdicts of the jury yet prior to the entry of judgment on the verdicts.

## I.

Osha has asserted general waiver by Hendrickson of all contentions of error raised in this appeal. First, he argues that Hendrickson's motion to correct errors and the memo-

randum thereto lack requisite specificity to present any questions to the trial judge or preserve any issues for review by this court. Secondly, it is argued that the effect of the post-trial motions for judgment on the evidence by both Osha and Hendrickson constituted a waiver of trial by jury and resulted in a joint submission of the case to the court on the evidence. Osha therefore contends that only issues applicable to a trial to the court are relevant for consideration on appeal and that since Hendrickson's issues are framed in the context of errors relevant only in a jury trial, no reviewable issues have been preserved.

We cannot agree with either of Osha's contentions. With respect to the assertion of the inadequacy of the motion to correct errors, we are cognizant of the requirements that the statement of claimed errors in the motion must be specific rather than general and must be accompanied by a statement of the facts and grounds upon which error is based. Ind. Rules of Procedure, Trial Rule 59(B). In determining whether the requirement of specificity has been met, the motion should be read together with its supporting memorandum. *Leist* v. *Auto Owners Insurance Co.* (1974), 160 Ind. App. 322, 311 N.E.2d 828; *Indiana Department of State Revenue* v. *Frank Purcell Walnut Lumber Co.* (1972), 152 Ind. App. 122, 282 N.E.2d 336. While Hendrickson's motion to correct errors is cast in general terms, we find that the supporting memorandum contains a sufficient statement of facts and grounds to be in substantial compliance with the specificity requirements of TR. 59(B).

In support of his argument that the concurrent motions for judgment on the evidence resulted in a waiver of trial by jury, Osha relies on the expression of that principle found in *Estes* v. *Hancock County Bank* (1972), 259 Ind. 542, 289 N.E.2d 728. In that case, following the return of a verdict in favor of the plaintiff on his claim for malicious prosecution against the defendant bank, both parties moved for judgment on the evidence. Considering the effect of the joint motions, the Supreme Court wrote:

"A motion made by both parties for judgment on the evidence in a jury trial takes the case from the jury and amounts to a joint submission of the case to the court on the evidence. Rule TR 50 provides, in effect, the same thing as a motion for a directed verdict. 2 Wiltrout, Indiana Practice § 1552(4), (1967), states:

'If, either at the end of the plaintiff's evidence or at the end of all the evidence, both parties ask for a directed verdict, the effect is the withdrawal of the case from the jury and its submission to the court for determination. . . . If the submission is withdrawn, the evidence is to be considered by the court the same as if the case had been tried without a jury.' "

In response to Osha's argument, Hendrickson draws our attention to that portion of Ind. Rules of Procedure, Trial Rule 50(A) (6), which reads:

"A motion for a judgment on the evidence which is not granted or which is granted only as to a part of the issues is not a waiver of trial by jury even though all parties to the action have moved for judgment on the evidence."

Examination of the Civil Code Study Commission Comments reveals that this statement was intended to abrogate the Indiana rule of waiver of the right to jury trial where both parties move for a directed verdict. See, 3 Harvey, *Indiana Practice* at 365.

The apparent conflict between the text of Trial Rule 50(A) (6) and the *Estes* decision need not be made a subject of discussion in this opinion and does not affect the resolution of the question presented herein by Osha. Our research reveals that the Indiana cases decided prior to the enactment of Trial Rule 50 did not ascribe to the position that concurrent motions for directed verdicts necessarily and absolutely result in withdrawal of the case from the jury. The rule was considered and discussed at length in *Michigan Central Railroad Company* v. *Splindler* (1937), 211 Ind. 94, 5 N.E.2d 632. Therein, the court reasoned:

". . . [W]e again affirm the correctness of the rule, that where both parties request a peremptory instruction and *do nothing more*, they thereby assume the facts to be undisputed and in effect submit to the trial judge the determina-

tion of the facts and all inferences proper to be drawn therefrom. But such is not the facts in the case before us. Here appellant, after his motion was denied, and before the court had made any ruling on appellee's motion, *moved that the trial proceed before the jury and that it be permitted to introduce its evidence in defense. . . .* From the above cases we conceive the rule to be that, where both parties request the court to direct a verdict in their favor either at the close of plaintiff's evidence, or at the close of all the evidence, and upon the refusal of the court to give it, the party whose motion is denied may insist by appropriate request upon proceeding with the trial, the same as if no motions at all had been made, if the motions are made at the close of plaintiff's evidence or if the motions are made at the close of all the evidence, if the evidence is conflicting or the inferences to be drawn therefrom are divergent.

\* \* \*

"So we conclude the correct rule to be that the filing of a motion for a directed verdict by each party does not of itself have the legal effect of a waiver of a jury, but if such motions are filed and nothing further is done, and each party stands by and acquiesces in the action of the court in directing a verdict, or in discharging the jury, they will be deemed to have waived their right to a jury and cannot afterwards complain. But if the party whose motion is denied requests the court to proceed with the trial or submit the questions of fact to the jury, such motion or request should be granted and the court would commit reversible error to direct a verdict or discharge the jury over his objection." (Original emphasis.)

Also see, *State Security Life Insurance Co.* v. *Kintner* (1962), 243 Ind. 331, 185 N.E.2d 527; Annot. 68 A.L.R. 2d at 313.

In the case at bar, as the parties moved for judgment on the evidence on the opponent's claim, each also moved for judgment on the jury's verdict in its favor. The parties therefore did not contemplate withdrawal of the case from the jury and submission of the factual issues to the court for determination. Moreover, the court's findings reveal that it did not consider the case withdrawn and that its review of the parties' motions was in accordance with the standards prescribed by TR. 50.

In conclusion, even assuming that the doctrine of waiver of trial by jury urged by Osha survived the enactment of TR. 50, we find that the parties' respective motions for judgment on the jury's verdicts in their favor constituted a sufficient reservation to prevent its operation in the instant case.

## II.

Issues (1), (2) and (3) allege error at trial in the admission of certain testimonial and physical evidence offered by Osha. For the reasons which follow, we conclude that Hendrickson has failed to demonstrate reversible error.

It is first argued that the trial court erred in permitting the testimony of plaintiff's expert witness James Lett, a mechanic employed by Osha to determine the cause of damage to internal parts of the automobile's engine. The substance of Lett's testimony was his opinion that the engine damage may have resulted from a defect in materials. The basis of Hendrickson's objection at trial and argument on appeal is that the witness was permitted to testify in violation of the terms of the pre-trial order governing disclosure of the identity of witnesses, and subject matter of their testimony. Hendrickson claims that it was not apprised of the name of the witness and substance of his testimony until the evening prior to the day of trial during which the witness was called.

Even assuming *arguendo* that the court abused its discretion in permitting the testimony, several factors prevent us from finding reversible error. The subject matter of the witness' testimony was one in which defendant's experts were well versed. The court allowed preliminary examination of the witness outside the presence of the jury. The court reserved its ruling on Hendrickson's motion for a continuance and appellant's brief fails to demonstrate that a final ruling on that motion was either requested or made. Finally, the verdict in favor of GM implies a finding by the jury that the damage to Osha's engine did not result from a defect in material or workmanship as Lett had testified.

For these reasons, we are of the opinion that any error in permitting the testimony must be deemed harmless. Ind. Rules of Procedure, Trial Rule 61; See also, *Marsh* v. *Lesh* (1975), 164 Ind. App. 67, 326 N.E.2d 626.

We likewise find harmless any error in the admission of Osha's testimony concerning the substance of a telephone conversation between himself and an unidentified person at GM's Regional Office in Louisville. The telephone call was motivated by delay in completion of repairs to the automobile on occasion (2) and Osha's apparent dissatisfaction with Hendrickson's explanation that it was encountering difficulty in locating a part necessary for completion of the repairs. The person with whom Osha spoke allegedly said that there should be no reason why Hendrickson could not easily obtain the part. Hendrickson objected to the testimony on the grounds of lack of identification of the person with whom Osha spoke. Hendrickson asserts that the alleged conversation could have led the jury to believe that it was not having difficulty obtaining parts for the automobile and was intentionally failing to make the repair. It is our opinion that this conclusory assertion falls short of qualifying as a demonstration of prejudice requiring reversal.

Hendrickson objected on grounds of relevancy to the admission of the security agreement and promissory note held by the Lynnville National Bank securing a loan for the purchase price of the automobile and a liability ledger sheet reflecting payment of the loan. Inasmuch as testimony concerning the substance of the contents of the exhibits was received without objection prior to their offer into evidence, the admission of the exhibits was merely cumulative and if erroneous, not reversible. See, *Haskett* v. *Haskett* (1975), 164 Ind. App. 105, 327 N.E.2d 612.

Hendrickson complains of the admission of one other of Osha's exhibits. The previously discussed telephone call made

by Osha to GM's Regional Office in Louisville, together with a prior call which resulted in referral to the Louisville number, were placed from the residence of Osha's mother, and she was billed for the calls. During her testimony, the printed telephone bill reflecting the toll charges for the calls was offered and admitted into evidence. Hendrickson objected and argues on appeal that the charges did not constitute a proper element of damage for the jury's consideration. The charges totalled one dollar and ninety cents. Suffice it to say that we cannot by any stretch of the imagination conclude that the injection of this element of damage, if improper, resulted in an erroneous award of damages.

### III.

Hendrickson argues under issues (4) and (5) that the court erred in refusing certain of its tendered final instructions and in giving certain of Osha's tendered instructions. Osha asserts that Hendrickson has waived any error with respect to the instructions due to its failure to set forth in its motion to correct errors the alleged erroneous instructions together with the objections thereto and failure to reproduce in its brief all the instructions given. Hendrickson has set forth in its brief all instructions upon which error is predicated, and the objections thereto. Further, all of the instructions tendered by the parties appear together in the record and bear markings indicating which were given and which were refused. Therefore, in view of our policy of preferring to decide cases on their merits, and since consideration of this issue will not necessitate a search of the record, we do not believe a finding of waiver would be appropriate.

Hendrickson's defense to Osha's claim of conversion was predicated on the theory that it acquired a lien for the value of the labor performed on the automobile at Osha's request, and that its retention of possession of the automobile was a proper method of perfecting its lien. This theory was em-

bodied in Hendrickson's tendered instruction no. 8, which was refused by the trial court, and which read:

> "You are instructed that, in the case of a garageman who was requested to repair, service or work on an automobile, of the owner, and pursuant to said labor, repair, maintenance, work and does furnish material and supplies pursuant to said agreement, the owner of said property fails to pay said garage owner for said services and the property remains in the possession of the garageman, the garageman does thereby have a right to retain the possession of said property until he is paid in full therefor in order to protect his garagemans or mechanics lien, and if the repair bill is not paid, the garageman, after demand for payment and waiting a reasonable time thereafter for the payment, may give written notice to the owner, advertise said property for sale and sell the same, giving full accounting for his acts without rendering himself liable to an action of conversion."

The instruction paraphrases the provision of the Motor Vehicle Code found at IC 1971, 9-9-5-6 (Burns Code Ed.), which reads in relevant part:

> ". . . Every such person, firm or corporation who shall perform labor, furnish materials or storage or do any repair work on or for any such motor vehicle, motor bicycle or motor truck, at the request of the owner thereof, is hereby given a lien on such motor vehicle, motor bicycle or motor truck, to the reasonable value of the charges for such labor, materials, storage or repairs, and in the event that the charges so made shall not be paid and the motor vehicle, motor bicycle or motor truck claimed within thirty [30] days from the date on which such motor vehicle, motor bicycle or motor truck was left in the possession of such person, firm or corporation for repairs, storage or the furnishing of materials, such person, firm or corporation may advertise such motor vehicle, motor bicycle or motor truck for sale and sell the same, after two [2] advertisements, once each week, in some newspaper of general circulation, printed and published in the English language, in the city or town in which the place of business of such lienholder is situated. The advertisement shall describe such motor vehicle, motor bicycle or motor truck, and shall state the amount of such unpaid charges. In addition to such advertisement, the lienholder shall notify the owner at his last known address, by registered mail, that such motor vehicle, motor bicycle or motor truck will be sold

at public auction to satisfy the lien thereon, within fifteen [15] days after such notice is mailed. If the owner of such motor vehicle, motor bicycle or motor truck does not claim the same and satisfy the lien thereon, such motor vehicle, motor bicycle or motor truck may then be sold at public auction . . . [Acts 1925, ch. 213, § 56, p. 570]."

Another statute providing for liens for work performed on motor vehicles is found at IC 1971, 32-8-31-1 (Burns Code Ed.) and provides as follows:

"Every person engaged in repairing, storing, servicing, or furnishing supplies or accessories for motor vehicles, airplanes, construction machinery and equipment, and farm machinery, and every person engaged in maintaining a motor vehicle garage, an airport or repair shop for airplanes, a repair shop or servicing facilities for construction machinery and equipment and farm machinery, shall have a lien on any such motor vehicle or airplane or any unit of construction machinery and equipment or farm machinery stored, repaired, serviced, or maintained, for his reasonable charges for such repair work, storage or service, including reasonable charges for labor, for the use of tools, machinery and equipment, and for all accessories, materials, gasoline, oils, lubricants and other supplies furnished in connection with the repair, storage, servicing or maintenance of any such motor vehicle or airplane or unit of construction machinery and equipment or farm machinery. [Acts 1949, ch. 189, § 1, p. 610.]"

The procedures for perfecting and foreclosing a lien acquired under this latter provision are prescribed by IC 1971, 32-8-31-3 and 32-8-31-5 (Burns Code Ed.) Osha's tendered instruction no. 10, which the court gave over Hendrickson's objection, quotes these latter provisions, reading as follows:

"Notice of intention to hold lien.—Any person seeking to acquire such lien upon any vehicle or airplane or unit of construction machinery and equipment or farm machinery, whether the claim to be secured by such lien be then due, or not, *shall* file in the recorder's office of the county where the repair, service or maintenance work was performed or the storage, supplies or accessories were furnished within sixty (60) days after the performance of such work or the furnishing of such storage, supplies, accessories or materials, a notice in writing of the intention to hold the

lien upon such motor vehicle or airplane or unit of construction machinery and equipment or farm machinery for the amount of his claim, specifically setting forth the amount claimed and giving substantial description of the motor vehicle or airplane or unit of construction machinery and equipment or farm machinery upon which such lien is asserted. Any description in a notice of intention to hold a lien will be sufficient if by such description such motor vehicle or airplane or unit of construction machinery and equipment or farm machinery can be identified. (Acts 1949, ch. 189, § 3, p. 610.)

"Foreclosure.—Each such lien may be foreclosed, as equitable liens are now foreclosed, in the circuit or superior court of the county where such motor vehicle, airplane or unit of construction machinery and equipment or farm machinery is located. The complaint for such foreclosure shall be filed within one (1) year from the time the notice of intention to hold the lien is recorded. (Acts 1949, ch. 189, § 5, p. 610)."

The primary distinction between the liens provided for in sections 9-9-5-6, *supra*, and 32-8-31-1, *supra*, lies in the means of perfection and foreclosure. The former, upon which Hendrickson relies, provides for perfection by retention of possession by the garageman and foreclosure by sale without judicial process on notice to the owner. A lien acquired under the latter statute must be perfected by filing, and enforcement requires the initiation of judicial foreclosure proceedings within one year of filing. The absence in this latter statute of a requirement that the garageman retain possession of the vehicle constitutes a significant departure from the common law. For purposes of convenience only, we will hereinafter refer to 9-9-5-6, *supra*, as the "possessory" lien statute and 32-8-31-1, *supra*, as the "non-possessory" lien statute.

Hendrickson argues that Osha's tendered instruction no. 10 was not relevant to the issues being tried since it was not asserting a lien under the non-possessory statute. It did not file any notice of intent to hold a lien and clearly no foreclosure proceedings were initiated within one year from the time in which notice would have been required to be filed. Rather, it asserts a lien under the possessory statute and

argues that the court's refusal to instruct the jury in accordance with that statute was error.

The question which we must initially consider is whether the present non-possessory lien statute supplanted or repealed the garageman's common law remedies and/or those created by prior statutes such as the possessory lien statute relied upon by Hendrickson. If the non-possessory statute provides the exclusive means by which a lien may be acquired, then Osha's tendered instruction no. 10 is relevant to the issues of the case since Hendrickson's withholding of possession of the automobile from Osha without compliance with the procedures for perfection and foreclosure under that statute may have constituted conversion.

We find nothing in the language of the present non-possessory lien statute indicating that it was intended to in any way limit either the garageman's common law remedy or that provided in the statute upon which Hendrickson relies. In *Grusin* v. *Stutz Motor Car Co.* (1933), 206 Ind. 296, 187 N.E. 382, our Supreme Court held that the possessory lien statute did not abrogate the garageman's common law lien, but rather was declaratory of the common law and provided the lienholder additional remedies. Further, the court noted that an existing statute providing to the lienholder substantially the same remedy found in the present non-possessory lien statute specifically provided that it should not be construed as repealing, modifying, or amending the possessory lien statute.

In *Eidson's Paint and Body Shop, Inc.* v. *Commercial Credit Plan, Inc.* (1969), 146 Ind. App. 209, 253 N.E.2d 717, this court tested the sufficiency of a garageman's cross-complaint asserting a lien for repairs and storage to withstand a demurrer. The pertinent facts alleged were summarized by the court as follows:

> "The 'titled owners' of the automobile, being defendant-appellees Kenny and Sheffield, delivered the automobile to appellant for repairs which were completed on November 11, 1966, in the reasonable amount of $1,403.90. By reason of the failure of appellees Kenny and Sheffield to pay the

repair bill and take possession of the automobile appellant was required to store it from November 11, 1966, to and including February 24, 1967, for which the reasonable charge was $106.00. Notice of intent to hold a lien for the total amount of the repair bill and storage bill was filed in the recorder's office March 23, 1967, within sixty days 'after the completion of said repairs and storage'. (Obviously more than sixty days after completion of repairs.)"

Although these facts appear to have been sufficient to state a cause of action under the possessory lien statute upon which Hendrickson relies in the case at bar, the specific question addressed and answered by the court was whether the garageman's lien had been perfected by timely filing pursuant to the non-possessory lien statute. The court found that the lien for storage had been perfected by timely filing but that no lien had been acquired for the repairs since the notice was filed more than sixty days following their completion.

We do not believe this case can be read to require the filing of a notice of intent where a lien is being asserted under the possessory lien statute. The case was apparently limited to the specific question raised by the parties. Further, Judge White qualified the opinion by stating ". . . the possibility exists that the facts alleged may show that appellant has a lien given by a rule of law or by some statute other than Burns Ind. Ann. Stat. §§ 43-807 trhough 43-812 [IC 1971, 32-8-31-1 *et seq., supra.*]. As to such possibilities, this opinion is, of course, no precedent."

We conclude that the possessory and non-possessory lien statutes provide separate, distinct remedies which a garageman may pursue in perfecting and enforcing a lien and that these remedies are in addition to those provided at common law.

Since Hendrickson did not claim a lien under the non-possessory lien statute, Osha's tendered instruction no. 10 was not relevant to the issues being tried. Generally, the giving of an instruction which is not relevant to the issues and applicable to the evidence is error.

However, the error is grounds for reversal only where it appears that the jury's verdict could have been predicated on the instruction. *Baker* v. *Mason* (1968), 253 Ind. 348, 242 N.E.2d 513. Hendrickson did claim a lien under the possessory lien statute and sought to have the jury instructed in accordance with that statute by its tendered instruction no. 8, which the court refused. This instruction embodied Hendrickson's theory of the case and was supported by the pleadings, issues, and evidence. Therefore, its refusal was error. See, *Indianapolis Horse Patrol, Inc.* v. *Ward* (1966), 247 Ind. 519, 217 N.E.2d 626; *Moore* v. *Funk* (1973), 155 Ind. App. 545, 293 N.E.2d 534.

Assuming Osha's liability to Hendrickson for the value of the labor performed, Hendrickson was entitled to retain possession of the automobile as a means of perfecting its lien and, while possession was retained, was not required to perfect by filing or initiate judicial foreclosure proceedings within a specified period of time. Under the instructions given, the jury could have found that despite its retention of possession of the automobile, Hendrickson's right to a lien was lost by the failure to file a timely notice. However, after examining the jury's verdict and other instructions given, we are of the opinion that Hendrickson was not prejudiced by the instructional error. While the total amount sought for repairs in Hendrickson's counterclaim amounted to only $243.84, the jury returned an award of $1210.00. The verdict therefore necessarily included a substantial award of the damages which Hendrickson claimed as storage charges incurred in retaining posesssion of the automobile to perfect its lien. Further, the possibility that the jury might have found that retention of the automobile after failing to perfect by filing was tortious was mitigated by the following instruction given by the court which read:

"You are instructed that if you believe, from the evidence, that the automobile in controversy belonged to the Plaintiff and that he was entitled to the possession of the same, at the time of the alleged conversion of the property, and if

you find that Plaintiff failed to demand the possession of said automobile of the Defendants before the commencement of this suit, and at the same time, the Plaintiff failed to offer to pay to the defendant the value of the labor, service, material, storage and other charges which had accrued upon said property that was due the Defendant from the Plaintiff, and that said Defendant was holding said automobile until said charges were paid, then these facts would amount to the Defendant, Hendrickson and Sons Motor Co. not being guilty of conversion and your verdict should be for the Defendant, Hendrickson and Sons Motor Co."

By its tendered instructions nos. 18 and 19, Hendrickson sought to have the jury instructed that Hendrickson acquired a lien for labor performed on Osha's automobile as a matter of law. As will be demonstrated by the discussion under part IV *infra* of this opinion, the instructions were erroneous. They were therefore properly refused by the court.

Also assigned as error is the court's refusal of Hendrickson's tendered instruction no. 6 which sought to instruct the jury on the elements of conversion. The court's ruling was not error since the jury was otherwise adequately instructed on the elements of conversion by Osha's tendered instruction no. 4 and Hendrickson's tendered instruction no. 5. See, *Richmond Gas Corp.* v. *Reeves* (1973), 158 Ind. App. 338, 302 N.E.2d 795.

Hendrickson argues that the court erred in giving Osha's tendered instruction no. 12 which informed the jury of Henrickson's potential liability for parts stolen or otherwise removed from the automobile during storage. Hendrickson objected to the instruction on the grounds that it permitted the jury to award damages for the missing items in addition to damages for conversion. The error in Hendrickson's argument is the assumption that Osha's claim sounded only in trover. Osha's complaint and evidence presented as an alternative a claim for damages for negligence resulting in injury to the automobile while in Hendrickson's possession. Hendrickson's tendered instruction no.

21, which the court gave, informed the jury that upon a finding of conversion, damages awarded should be limited to the fair market value of the automobile at the time of conversion.

Any alleged error in the giving of Osha's tendered instructions nos. 2 and 3 must be deemed waived since the grounds asserted on appeal differ from those stated in Hendrickson's objection at trial.

## IV.

Hendrickson moved for judgment on the evidence on Osha's claim at the close of plaintiff's evidence and at the close of all the evidence. Issue (6) presents the question of whether the court erred in failing to grant the motions. For the reasons which follow, we find no error in the submission of Osha's claim to the jury for its consideration.

Motions for judgment on the evidence (directed verdict) are governed by Ind. Rules of Procedure, Trial Rule 50. Pursuant to that rule, a defendant's motion for judgment on the evidence made at the close of the plaintiff's evidence or at the close of all the evidence should be granted only in the absence of evidence or reasonable inference on at least one essential element of the plaintiff's claim, *Miller* v. *Griesel* (1974), 261 Ind. 604, 308 N.E. 2d 701; *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849. The evidence must be without conflict and susceptible of but one inference, that being in favor of the moving party. In examining the evidence, the trial judge must draw all fair and rational inferences in favor of the party opposing the motion and give that party every favorable intendment of the evidence. *Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784. The court may not substitute its judgment for that of the jury on questions of fact nor grant the motion because the evidence decidedly preponderates in favor of the moving party. *Smith* v. *Chesapeake and Ohio Railroad Co.* (1974), 160 Ind. App. 256, 311 N.E.2d 462; *Galbreath* v. *City of Logansport* (1972), 151 Ind. App. 291, 279 N.E.2d 578.

Appellate review of rulings on motions for judgment on the evidence is subject to the same standards which govern the trial court in ruling on the motion. Our task therefore is to determine whether there was any evidence justifying submission to the jury of Osha's claim against Hendrickson. See, *Myers* v. *Maris* (1975), 164 Ind. App. 34, 326 N.E.2d 577; *Smith* v. *Chesapeake and Ohio Railroad Co.*, *supra*.

Initially, we note that our analysis need not be limited to an examination of the evidence presented prior to the motion at the conclusion of Osha's case. Pursuant to TR. 50(A)(6), any error in the ruling on that motion is deemed corrected by evidence subsequently offered or admitted.

Hendrickson argues that no evidence was presented from which the jury could have found that the retention of possession of Osha's automobile constituted conversion. Reliance is placed on IC 1971, 9-9-5-6, *supra*, which is declaratory of the garageman's common law right to retain possession of a vehicle to perfect a lien for labor and repairs. The error in Hendrickson's argument, however, lies in its assumption that it as a matter of law acquired a lien for the labor performed on Osha's automobile. By voluntarily surrendering possession of the automobile after performing the repairs on occasions (1) through (4), Hendrickson waived any right to a possessory lien which may have arisen. See, *Tucker* v. *Taylor* (1876), 53 Ind. 93; *Vaught* v. *Knue* (1917), 64 Ind. App. 467, 115 N.E. 108. Therefore, its right to a possessory lien, if any, must have arisen for the labor performed on occasion (5), the purpose of which was to ascertain whether the damage to internal engine parts resulted from a warrantable defect in material or workmanship.

In our opinion, it cannot be disputed that in performing labor to ascertain the warrantability of the damage to Osha's

engine Hendrickson was acting as the agent of GM. We are further of the opinion that if the damage was in fact the result of a warrantable defect in material or workmanship, no lien could have arisen in favor of Hendrickson for the labor performed in ascertaining the nature of the defect since no debt would have been owing by Osha to Hendrickson therefor. There being conflicting evidence presented on the question of whether the engine damage resulted from a warrantable defect in material or workmanship, it was properly submitted to the jury for determination. Assuming a resolution of this question in favor of Osha, the jury would then be entitled to consider whether retention of possession of the automobile by Hendrickson constituted a tortious conversion, which has been defined as:

"The exercise of dominion over personal property to the exclusion and in defiance of the rights of the owner or withholding it from his lawful possession under a claim of title inconsistent with the owner's (title), . . ." *Monarch Buick Co., Inc.* v. *Kennedy* (1965), 138 Ind. App. 1, 209 N.E.2d 922; *Hardy* v. *Heeter* (1951), 120 Ind. App. 711, 96 N.E.2d 682.

Hendrickson's assertion that Osha failed to present evidence of a demand for possession of the automobile is without merit. Osha testified that on three different occasions he requested that the automobile be returned to his home and that Hendrickson's service manager promised to do so on each occasion.

Hendrickson's motion for judgment on the evidence was properly overruled for yet another reason. Even assuming that the retention of possession of the automobile was lawful, the jury was entitled to consider the question of whether Hendrickson was liable for damage and loss sustained while the automobile was in its possession.

As this court wrote in *General Grain, Inc* v. *International Harvester Co.* (1968), 142 Ind. App. 12, 232 N.E.2d 616:

"The rule is well established in Indiana that where the bailor of goods has shown that they were received in good condition by the bailee and were not returned to the

bailor on demand, the former has made a prima facie case of negligence against the bailee and the latter must show that the loss or damage was caused without his fault. *Employers Fire Ins. Co.* v. *Consolidated Garage & Sales Co., et al.* (1926), 85 Ind. App. 674, 155 N.E. 533.

\* \* \*

" 'Professional bailees' are those who make it their business to act as bailees and who deal with the public on a uniform rather than an individual basis. Appellee cannot perform its day to day services offered to the public without creating a bailment relationship either by contract or implication of law. The delivery of appellant's tractor to appellee was an incident to the latter's business.

"We would enlarge the scope of a 'professional bailee' beyond the definition conceded by appellee to include storage and repair garages. In so doing we are not changing the law. We are simply invoking a reasonable and realistic application of existing law."

Osha testified that his automobile had sustained certain dents and scrapes while in Hendrickson's possession. As a result of storage of engine parts in the passenger compartment the leather seats bore rust stains and puncture holes. Further, the transmission, carburetor, intake manifold, and cylinder heads were missing from the automobile at the time of trial. This evidence was sufficient to make a *prima facie* case of negligence or trespass on the case for injuries to chattels against Hendrickson and was therefore sufficient to withstand Hendrickson's motion for judgment on the evidence.

## V.

Hendrickson argues that the trial court erred in entering judgment modifying the jury's verdict pursuant to the parties respective post-verdict motions for judgment and judgment on the evidence.

Osha's motion for judgment on the evidence alleged that the jury's verdicts in favor of Osha on his claim and in favor of Hendrickson on its counterclaim were inconsistent and further alleged that there was no evidence supporting the verdict in favor of Hendrickson except possibly to the

extent of $243.84 for parts and labor furnished. The trial court, as reflected by its findings, agreed and granted Osha's motion for judgment on the evidence in part, reducing the award in favor of Hendrickson to $243.84.

The jury by its verdict in favor of GM found that the labor and repairs performed on Osha's vehicle were not warrantable. Viewing the evidence in a manner consistent with this verdict and most favorable to Hendrickson, the non-moving party, leads to the conclusion that Hendrickson acquired a lien on Osha's automobile for the value of labor furnished. As we have previously determined, Hendrickson waived its right to a lien for repairs and labor furnished prior to December 29, 1969, by voluntarily surrendering possession of the automobile. However, it retained possession of the automobile for purposes of perfecting its lien for labor furnished subsequent to that date. The storage was not requested by Osha but resulted from his failure to pay the labor charges and take possession of the automobile. In such circumstances there arose a quasi contract or legally implied contract to pay for the storage. *Eidson's Paint & Body Shop, Inc.* v. *Commercial Credit Plan, Inc., supra,* citing, *Hill & Sanders* v. *Keneipp* (Mun. Ct. App. Dist. Col., 1954), 109 A.2d 141, 48 A.L.R.2d 889. In ruling on Osha's motion for judgment on the evidence, the court apparently found that Hendrickson was not entitled to recover storage costs due to its failure to file a notice of intent to hold a lien. However, as we have determined, Hendrickson was entitled to perfect its lien by possession and in such circumstances was not required to perfect by filing. The jury's verdict in favor of Hendrickson on its counterclaim in the sum of $1210.00 therefore finds support in the evidence.

Contrary to the assertion in Osha's motion for judgment on the evidence, the jury's verdict in favor of Hendrickson is not inconsistent with the verdict in favor of Osha on his claim against Hendrickson. The verdicts would be inconsistent if the verdict in favor of Osha was construed as a

recovery in trover since retention of possession of the automobile to perfect a valid possessory lien could not have constituted conversion. However, as we have previously pointed out, Osha's complaint and evidence adduced at trial established a claim for recovery on the theory of negligence or trespass on the case for injury to the automoible while in Hendrickson's possession.

With respect to the question of whether the trial court erred in overruling Hendrickson's post-verdict motion for judgment on the evidence, we find no error for the above stated reasons and those stated in part IV, *supra*.

In conclusion, the trial court erred in granting Osha's post-verdict motion for judgment on the evidence in part and the judgment is reversed and remanded with instructions to the trial court to reinstate the jury's verdicts.

Reversed and remanded with instructions.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 331 N.E.2d 743.