Eddison AUSTIN, d/b/a Austin's Auto
Service, Appellant,

v.

Clifford ACEY, Carrielyn E. Acey and
Star Credit Union, Respondents.

No. WD 34255.

Missouri Court of Appeals,
Western District.

Oct. 25, 1983.

John A. Maichel, Kansas City, for appellant.

David Brydon and Stephen G. Newman, Jefferson City, for respondents.

Before MANFORD, P.J., TURNAGE, C.J., and KENNEDY, J.

KENNEDY, Judge.

This case was decided in the court below, and briefed on appeal, on the narrow issue of the existence of a garageman's lien for storage of an automobile which had been repaired by the garageman and then left in his possession without payment of the repair bill.

The trial court held that there was no such lien and on that ground denied the garageman's claim for storage.

We hold that the trial court erred in so holding, and we remand the case to the trial court for determination of the "amount due" from the defendant car owners to the plaintiff garageman for storage. § 430.-020, RSMo 1978.

The facts of the case are as follows:

Defendants Acey, husband and wife, owned a 1975 Chevrolet Monza automobile. Mr. Acey on December 27, 1980, brought the car to plaintiff Austin's auto repair shop for repairs. Austin diagnosed the difficulty and with Acey's authorization replaced a cylinder head gasket and set the engine timing. The total bill for parts and labor was $124.90.

We pause here to say that there is no dispute about the bill for parts and labor, nor about its being a lien on the vehicle. The court gave judgment for this amount and neither party complains about it.

Mr. Acey came in for the car on December 31, 1980. As one of Austin's mechanics was making some final "adjustments" on the car, the engine "locked". The car was inoperable. Austin determined at the time, and testified at the trial that this failure was not connected with the work he had

done on it, but resulted from something in the bottom part of the engine.

Acey wanted Austin to put the car in operating condition, but Austin declined to undertake the necessary dismantling and repair of the crippled engine. The Aceys apparently agree that this would properly have been at additional expense to them. Testifying at the trial Austin said, "(W)e don't go into Vegas or Monzas or Chevettes . . . they are nothing but trouble".

Acey nonetheless gave Austin a check for the bill of $124.90, with the new problem with the engine still unresolved. Austin called Acey's bank (when he did this is not entirely clear) and was told that there were insufficient funds to cover the check. He deposited the check, however. It was returned with the notation "payment stopped". Mr. Acey at the trial acknowledged that he had stopped payment on the check.

Acey left the car in Austin's shop, still urging Austin to tear into it to find the source of the locking and to repair it. From time to time after this, according to Acey's testimony, "I called him, went by and saw him a few times and kept asking him, I'm sure, 'Mr. Austin, is there something we can work out? Would you recommend someone?'" "No, it's out of my hands".

Austin testified that Acey never asked for the return of his car. Acey said he had—although he also testified that Austin had asked him to get his car towed away. Nothing was ever said by either to the other about payment, according to the testimony.

Austin then on July 20, 1981, filed this lawsuit in the Associate Circuit Court Division "for the purpose of availing himself of the statutes providing for liens on animals and vehicles, harnesses, and equipment coming into his possession and storage therefor . . .", as the petition reads.

Acey and his wife responded with a counterclaim for conversion.

Upon the trial of the case plaintiff Austin received judgment for $124.90, to be a lien upon the vehicle. The court, as before noted, denied his claim for storage charges on the ground that there was no lien on the vehicle for storage charges; and gave judgment against the defendants Acey on their counterclaim for conversion.

*Garageman's lien for storage.*

We hold that § 430.020, RSMo 1978, does give to a garageman a lien for storage charges of a motor vehicle received by him for repairs. The statute reads as follows:

> *Every person who shall keep or store any vehicle, part or equipment thereof, shall, for the amount due therefor, have a lien;* and every person who furnishes labor or material on any vehicle, part or equipment thereof, who shall obtain a written memorandum of the work or material furnished, or to be furnished, signed by the owner of such vehicle, part or equipment thereof, shall have a lien for the amount of such work or material as is ordered or stated in such written memorandum. *Such liens shall be on such vehicle, part or equipment thereof, as shall be kept or stored, or be placed in the possession of the person furnishing the labor or material.* (Emphasis ours).

The legislative title to the enactment reads as follows (1915 Mo.Laws, page 327): "An act to provide liens for keeping, storing and repairing vehicles, and for work done and material furnished on horses, mules and other animals, and providing a penalty for disposing of the same, upon which there is a lien."

The trial judge believed that the storage lien of the above statute was for the benefit of warehousemen, and not for repairmen. We conclude, however, from its placement in this section that it is intended for garagemen to whom a motor vehicle might be entrusted for repairs. If the legislature had intended to establish a warehouseman's lien, one would expect to find it in the statutes relating to warehousemen's liens, or one would expect the legislature to have used the term "warehouseman" as the beneficiary of the lien, rather than the more inclusive "every person who shall keep or store" any vehicle, which was used in this

statute. See Sutherland, Statutes and Statutory Construction, § 18.07, 47.02 (C. Dallas Sands 4th ed. 1972).

Another feature that militates against the sections benefiting only warehousemen is the fact that warehousemen already had a common law lien on stored property, and there would be no sense in a statute which gave a warehouseman a lien they already had, and only upon motor vehicles at that. *McCluskey v. DeLong,* 198 S.W.2d 673, 675 (Mo.App.1946).

These considerations lead us to the conclusion that the garageman to whom a motor vehicle is entrusted for repairs has also a lien for the "amount due" for storage. *Hill and Sanders v. Keneipp,* 109 A.2d 141 (D.C.1954), 48 A.L.R.2d 889 (1956).

*Storage charges.*

What we have decided above is that § 430.020, supra, gives a lien for the "amount due". The statute does not tell us what is the "amount due", if any, or how it is to be determined. The question is not before us for decision, but the trial court and the parties will find instructive the case of *Shoemaker v. Marcum,* 9 S.W.2d 863 (Mo.App.1928), and an annotation, "Lien for Storage of Motor Vehicle", 48 A.L.R.2d 894, 913, § 9 (1956).

The statute does not create an obligation on the part of the automobile owner which did not exist before the statute. It only provides a remedy for the collection of the obligation, if and when such obligation arises. The trial court never reached the question of the "amount due". The trial court considered it dispositive of the case that there was no lien for storage charges, and the parties have briefed the case upon that narrow issue.

*Conclusion.*

The judgment is reversed and the cause is remanded for a determination of the "amount due", if any, for storage. Any such sum is to be a lien upon the automobile, unless facts arising after the judgment in this case have constituted a waiver or release of the lien by plaintiff.

All concur.