# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JAMES. A. GEIGER**
O'Koon Hintermeister, PLLC
Indianapolis, Indiana


ATTORNEYS FOR AUTOMOBILE
DEALERS ASSOCIATION OF INDIANA:
**RONALD C. SMITH**
**BRYAN H. BABB**
**JOEL T. NAGLE**
Bose McKinney & Evans, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DONN H. WRAY**
**MARC A. MENKVELD**
Katz & Korin, PC
Indianapolis, Indiana



FILED

Jul 14 2014, 9:47 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY BANKS, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-PL-362 |
| | ) | |
| DENNY JAMISON, d/b/a, | ) | |
| AUTOMOTIVE HAMMERART | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia Ayers, Judge
The Honorable Burnett Caudill, Magistrate
Cause No. 49D04-1203-PL-12870

**July 14, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Terry Banks ("Banks") appeals the trial court's order granting partial summary judgment to Denny Jamison d/b/a Automotive HammerArt ("Jamison") on Banks's claims of theft, conversion, and commission of a deceptive act, which he alleged following Jamison's foreclosure of a possessory mechanic's lien against Banks for unpaid work done to Banks's car. On appeal, Banks presents one issue, which we restate as whether the trial court erred by granting partial summary judgment to Jamison on Banks's claims of theft and conversion and on one of two alleged violations of the Indiana Deceptive Consumers Sales Act based on its conclusion that Banks was collaterally estopped from challenging the validity of the mechanic's lien.

We affirm in part, reverse in part, and remand.

**Facts and Procedural History**[1]

This appeal involves Banks's 1973 Dodge Challenger ("the Challenger") and Jamison's mechanic's lien on and foreclosure sale of the Challenger pursuant to Indiana's possessory mechanic's lien statute, Indiana Code section 9-22-6-2.[2] The facts regarding the work authorized to be done on the Challenger and the communication regarding that work are highly disputed by the parties. The facts most favorable to Banks, the non-moving party in this summary judgment proceeding, reveal that, prior to February 2011,

---

[1] We held an oral argument in this case on May 12, 2014, in the Court of Appeals Courtroom in the Indiana Statehouse. We thank counsel for their preparation and presentation.

[2] The mechanic's lien statute in effect at the time of the facts involved in this case was actually Indiana Code section 9-22-5-15, which was amended and recodified at Indiana Code section 9-22-6-2, effective July 1, 2012. The parties and the trial court referred to the current version of the possessory mechanic's lien statute, Indiana Code section 9-22-6-2. Because the relevant sections of the recodified version of the mechanic's lien statute are not substantively different from the prior version, we too will refer to the current version of the statute for purposes of this appeal. Additionally, we note that the legislature amended Indiana Code section 9-22-6-2 during the 2014 legislative session, with an effective date of July 1, 2015. However, the subsection at issue in this appeal was not amended.

"the Challenger ha[d] previously been almost completely restored at another automotive shop[.]" Appellant's App. p. 69. In late February 2011, Banks had the Challenger towed to Jamison's auto shop so that Jamison could paint it and install a motor, transmission, torque converter, and a starter. Shortly thereafter, Jamison informed Banks that he needed to "sandblast the Challenger to make sure it was in good enough condition to be painted[,]" and Banks allegedly authorized Jamison to do that work and to "provide [Banks] with [Jamison's] opinion on what further body work, if any, needed to be done on the Challenger[,] along with an estimate of the potential charges for any such work." Appellant's App. p. 70.

Jamison started performing labor on the Challenger in May 2011 and performed additional labor in August and September 2011. In late September or early October of 2011, Banks went to see the Challenger after Jamison had called him and told him that Jamison had completed the sandblasting. When Banks arrived at Jamison's shop, Jamison informed Banks that he had "already done $3,500 worth of body work to the Challenger[,]" and Banks "immediately questioned Mr. Jamison why he had performed any work, other than sandblasting the Challenger, without [Banks's] permission[.]" Appellant's App. p. 71. Banks refused to pay Jamison the $3,500 and "clearly stated to [Jamison] that he did not have permission to do any further work on the Challenger." Id.

On October 28, 2011, Banks went back to Jamison's shop, and Jamison gave Banks an invoice, which indicated that Jamison had performed 86.5 hours of labor on the

3

Challenger and that Banks owed a total of $5,082 for work done to the Challenger.[3]

Banks refused to pay the invoice amount and, instead, paid Jamison $500.00 by check.[4]

According to Banks, he paid the $500.00 because he thought it was a reasonable amount

for the sandblasting work.

Three days later, on October 31, 2011, Jamison, still in possession of the

Challenger, sent Banks the following letter via certified mail to Banks's business address

on 46th Street in Indianapolis:

> As a small business owner, you can appreciate the dilemma that you've put me in by delaying payment of your bill. You received your bill in mid-September and after several broken promises of payment you paid $500 on a bill of $5082. As a small business owner, I cannot operate this way. Your bill is due and payable upon receipt. Therefore, I have moved the car to storage, as of today, and will be charging you $50 per week for storage fees. This bill must be paid in full plus storage fees by November 30, 2011 or I will immediately pursue legal action to collect the balance plus fees owed to me.

Appellant's App. p. 42. Banks did not pay the requested amount and did not retrieve the

Challenger from Jamison.

Subsequently, at the end of November 2011, Jamison hired a self-styled

"mechanic's lien processor," Indiana Lien,[5] to initiate the mechanic's lien foreclosure

process. Indiana Lien then mailed, via certified mail with return receipt requested, a

notice of the mechanic's lien and the scheduled December 29, 2011 foreclosure sale to

Banks at his 46th Street business address and to his former personal address on Fall

Creek Parkway on Jamison's behalf. The letter sent to Banks's 46th Street business

---

[3] The parties do not discuss in detail the exact labor that was performed on the Challenger.

[4] In the memo section of the check, Banks wrote that it was for "Car Repair." Appellant's App. p. 41.

[5] See http://www.indianalien.com.

4

address was returned as "Unclaimed, Unable to Forward" and the letter sent to the Fall Creek Parkway address was returned as "Not Known, Unable to Forward." Appellant's App. p. 45. Jamison also placed a notice of the December 29 foreclosure sale in a newspaper as required by the possessory mechanic's lien statute.

In the meantime, Banks sought legal counsel. On December 2, 2011, Banks's attorney sent Jamison a letter, in which Banks asserted that he had authorized Jamison only to paint the Challenger and had not authorized any other work to be done on the vehicle. In his letter, Banks also stated that he did "not owe [Jamison] any money, whatsoever, for work [he] did without any authorization and without any written estimate." Appellant's App. p. 51. Additionally, Banks's attorney demanded that Jamison "immediately contact Mr. Banks and permit him to pick up his vehicle." Id.

On December 21, 2011, Banks's attorney sent an additional letter, noting that Banks had not received a response from Jamison. Banks's attorney requested that Jamison contact Banks to arrange a time for Banks to pick up his vehicle. Jamison did not respond to Banks's letter.

After Banks did not receive a response to either of his letters, he filed a complaint against Jamison with the Indiana Attorney General's Office. Banks also obtained new legal counsel, and his attorney sent Jamison a letter on March 7, 2012. In this letter, Banks sought return of the Challenger and claimed that Jamison "had no legal right to do anything to Mr. Banks' property other than paint it." Appellant's App. p. 53. At some point, Banks learned from the Attorney General's Office that Jamison had asserted a mechanic's lien on the Challenger and had sold it at auction on December 29, 2011.

Thereafter, on March 29, 2012, Banks filed a complaint against Jamison, alleging a claim of theft. In August 2012, Banks filed an amended complaint, alleging three claims: (1) theft; (2) conversion; and (3) violation of the Indiana Deceptive Consumers Sales Act ("DCSA").[6] In regard to Banks's theft and conversion claims, he alleged that Jamison "knowingly or intentionally exerted unauthorized control over Mr. Banks' property, the Vehicle and the Parts, first by performing unauthorized body work on the Vehicle, later by retaining the Vehicle and the Parts after Mr. Banks demanded their return[,] and finally by selling the Vehicle on or about December 29, 2011." Appellee's App. pp. 9-10. In regard to the DCSA claim, Banks alleged that Jamison had violated the DCSA by committing the deceptive acts set forth in Indiana Code section 24-5-0.5-3(a)(5) and section 24-5-0.5-3(a)(14).[7] Under each count, Banks sought to recover treble damages, attorney fees, and pre-judgment and post-judgment interest.

On September 20, 2012, Jamison filed a motion for partial summary judgment. Jamison's designated evidence included an affidavit[8] in which he averred that he had

---

[6] "The Indiana Deceptive Consumer Sales Act . . . provides remedies to consumers and the attorney general for practices that the General Assembly deemed deceptive in consumer transactions." McKinney v. State, 693 N.E.2d 65, 67 (Ind. 1998). "The DCSA is a remedial statute and 'shall be liberally construed and applied to promote its purposes and policies' of protecting consumers from deceptive or unconscionable sales practices." Kesling v. Hubler Nissan, Inc., 997 N.E.2d 327, 332 (Ind. 2013) (quoting Ind. Code § 24-5-0.5-1).

[7] Indiana Code section 24-5-0.5-3(a)(5) (2011) provided that the following is a deceptive act: "That replacement or repair constituting the subject of a consumer transaction is needed, if it is not and if the supplier knows or should reasonably know that it is not." Indiana Code section 24-5-0.5-3(a)(14) (2011) provided that the following is a deceptive act: "Engaging in the replacement or repair of the subject of a consumer transaction if the consumer has not authorized the replacement or repair, and if the supplier knows or should reasonably know that it is not authorized." This statute was amended in 2013, but these subsections were not amended. Additionally, this statute was also amended in the 2014 legislative session.

[8] In Banks's Appendix, he has included an unsigned copy of Jamison's affidavit.

6

discussed with Banks the labor that Jamison would perform on the Challenger and had informed Banks that the cost would be $50.00 per hour plus materials. Jamison also averred that "Banks agreed to pay for labor at that rate and also agreed to pay for materials." Appellant's App. p. 32. Additionally, in his affidavit, Jamison stated that he had specifically discussed the labor performed and the resulting bill with Banks and that "Banks did not give any indication that he disapproved of the work performed or the amount of the bill." Id. Jamison also averred that Banks had not indicated that any of the work was unauthorized.

In his summary judgment motion, Jamison first argued that he was entitled to summary judgment on Banks's theft and conversion claims because Banks could not meet his burden of showing that Jamison knowingly or intentionally exerted unauthorized control over the Challenger by (1) performing work on it; (2) retaining possession of it after Banks demanded its return; and (3) selling it. Jamison argued that Banks could not show that he exerted unauthorized control by performing work on the Challenger because Banks delivered the vehicle to Jamison and because the act of performing work on property did not fall under the statutory definition of "exert control over property" contained in Indiana Code section 35-43-4-1(a).[9]

Jamison acknowledged that he had retained possession of the Challenger and sold it, but he argued that he was authorized to do so under the possessory mechanic's lien

---

[9] Under Indiana Code section 35-43-4-1(a), "exert control over property" is defined as "to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property."

statute, Indiana Code section 9-22-6-2.[10] Jamison argued that Banks could not show that he exerted unauthorized control of the Challenger when he possessed it and sold it because Banks had consented to the work performed, which resulted in Jamison holding a mechanic's lien on the vehicle. Jamison argued that Banks, who did not challenge the lien or the foreclosure process prior to the sale of the Challenger, was now precluded from arguing that Jamison was not authorized to hold and foreclose his mechanic's lien.

In the alternative, Jamison also argued that—even if he was not authorized to possess or sell the Challenger as part of the foreclosure process under the mechanic's lien statute—Banks's claims of theft and conversion would still fail because Banks could not prove that Jamison had the necessary criminal culpability to commit theft and conversion. Jamison argued that his designated evidence showed that Jamison believed he was authorized to perform the work and that Banks's actions were consistent with those of a person who gave authorization to perform the work on the Challenger. Jamison further argued that even if Banks had not consented to the work performed, Banks would not be able to prove that Jamison was aware of the absence of consent.

Finally, Jamison argued that he was entitled to summary judgment on Bank's DCSA claim alleging that Jamison had violated subsection (a)(14) of the DCSA because Banks could not prove both that he had not authorized the repair and that Jamison knew or should have known that the repair was not authorized. See Ind. Code § 24-5-0.5-3(a)(14). Jamison argued that, even if Banks had not authorized the repairs, then Jamison

---

[10] Although Jamison cited to Indiana Code section 9-22-6-2, the mechanic's lien statute in effect at the time of the facts involved in this case was Indiana Code section 9-22-5-15. See note 2, supra.

8

could not have known that he was not authorized to perform the repairs to the Challenger because Banks never challenged the mechanic's lien on the Challenger or the foreclosure sale.

Banks responded to Jamison's partial summary judgment motion and designated his own affidavit in which he disputed the statements Jamison had made in his affidavit. Banks argued that he did not authorize Jamison to perform "all the work" done on the Challenger. Appellant's App. p. 55. Banks argued that he had only authorized Jamison to "sandblast[] the Challenger to determine what further body work would be required before painting the Challenger" and to "install[] some provided parts[,]" including a motor, transmission, torque converter, and a starter. Id. at 54. In his affidavit, Banks averred that:

> At no time, did [he] ever give Mr. Jamison [his] permission or consent, explicit or implicit, express or implied, to perform any work on the Challenger other than sandblasting the vehicle to determine what remaining body work, if any, needed to be completed prior to Mr. Jamison commencing painting the Challenger and installing the delivered parts.

Id. at 70. According to Banks, he paid the $500.00 to Jamison because he "felt that [that amount] was a reasonable fee" for sandblasting the Challenger. Id. at 72.

Banks also challenged whether Jamison had obtained a valid mechanic's lien, arguing that Jamison "did not have express or implied permission to perform all of the work" on the Challenger. Id. at 55. Banks argued that "[s]ince most of the work on the Challenger was done without Mr. Banks' authorization, the sale of the Challenger by Mr. Jamison pursuant to the foreclosure of an improperly-obtained mechanic's lien support[ed] a claim for theft and or conversion as well as a statutory deceptive acts

9

claim[.]" Id. Banks stated that he did not previously challenge the mechanic's lien because he had not received notice of the lien or the foreclosure sale.

Banks argued that Jamison was not entitled to summary judgment because genuine issues of material fact existed regarding whether Jamison was authorized to perform "all of the work" done on the Challenger and whether Jamison knew or should have known that the repairs done were unauthorized. Id. at 62. Banks argued that all the facts taken together with all inferences in his favor led to "the reasonable conclusion that Mr. Jamison did not have authority to perform all of the work he allegedly did to the Challenger and that he therefore knowingly or intentionally exerted unauthorized control over Mr. Banks' property." Id. at 65. Banks also argued that Jamison was not entitled to summary judgment on Banks's deceptive act claim because his designated evidence showed that Jamison did not have authority to perform any body work on the Challenger and that Jamison knew or should have known that he did not have authority based on Banks's statements and conduct.

In Jamison's summary judgment reply, he argued that "[a]ny dispute as to whether Jamison was authorized to hold and foreclose a mechanic's lien on the Challenger must have been raised by Banks prior to the foreclosure sale" and that, as a result, Banks had "waived his right to now argue that Jamison was not authorized to foreclose his mechanic's lien." Id. at 78. Jamison asserted that he was authorized to possess and sell the Challenger by the mechanic's lien statute and argued that Banks had failed to designate evidence creating a genuine issue of material fact regarding whether Jamison knew or intended that his control over the Challenger was unauthorized. Jamison also

10

cited to Indiana Trial Rule 4.16 to support his argument that Banks could not challenge his lack of notice of the sale. Additionally, Jamison argued that he was entitled to summary judgment because

> Banks (1) [could not] refute the preclusive effect that the foreclosure sale of the Challenger ha[d] on his current claims, (2) [could not] designate any material facts showing that Jamison did not believe he was authorized to hold and foreclose a mechanic's lien on the Challenger, (3) [could not] deny having been given proper legal notice of initiation of the lien foreclosure process and (4) failed to assert any claim or defense to that process, which proceeded to lawful completion.

Appellant's App. p. 81.

On February 19, 2013, the trial court held a summary judgment hearing. Thereafter, the trial court issued findings of fact and conclusions of law, in which it granted Jamison's motion for partial summary judgment. In its summary judgment order, the trial court determined that Banks was estopped from collaterally attacking the validity Jamison's mechanic's lien and the sale of the Challenger because he did not challenge the mechanic's lien prior to the date it was sold at auction. As a result, it determined that Banks's claims for theft, conversion, and one of the two alleged violations of the DCSA were barred by Indiana's mechanic's lien statute. In relevant part, the trial court concluded:

> 2. [Indiana Code section] 9-22-6-2 provides "[a]n individual, a firm, a limited liability company, or a corporation that performs labor, furnishes materials or storage, or does repair work on a motor vehicle . . . at the request of the person that owns the vehicle has a mechanic's lien on the vehicle for the reasonable value of the charges for the labor, materials, storage, or repairs." [Indiana Code section] 9-22-6-2 permitted Jamison to maintain possession of the Challenger and to sell it at auction to satisfy the outstanding sum owed for the work he performed.

11

3. IC 9-22-6-2 (d) requires a party seeking to foreclose a mechanic's lien obtained under IC 9-22-6-2 (a) to place notice in the newspaper of general circulation . . . Jamison, acting through Indiana Lien, complied with the public notice requirement of IC 9-22-6-2 (d).

4. IC 9-22-6-2 (e) also requires a person holding a mechanic's lien to notify the owner of the vehicle at the person's last known address, by certified mail that the vehicle will be sold at public auction on a specified date to satisfy the mechanic's lien imposed by IC 9-22-6-2 (a). Jamison also complied with the requirements of [Indiana Code section 9-22-6-2(e)] by sending notice that the Challenger would be sold at auction on December 29, 2011 to satisfy the mechanic's lien to Banks' last known address, which was also the address Banks used in corresponding with his attorneys.

5. Neither IC 9-22-6-2 (d) or (e) requires that the owner of the vehicle to be sold at public auction actually receive the notice prescribed by those subsections. Also a party cannot avoid the legal effect of proper notice by ignoring it. Ind. Tr. R. 4.16(a).

6. The Court concludes that Jamison complied with the foreclosure requirements set forth in IC 9-22-6 *et seq*. The Court further concludes that by failing to challenge the validity of the mechanic's lien imposed by IC 9-22-6[-2](a) prior to the date of the public auction at which the Challenger was sold, Banks is estopped from collaterally attacking Jamison's mechanic's lien and the sale of the Challenger. Banks is, therefore, barred from making a claim premised on the allegation that Jamison was not authorized to perform work on the Challenger, and was not authorized to hold and foreclose a mechanic's lien on the Challenger. Banks should have made such claims during the foreclosure process. To hold otherwise would vitiate the mechanic's lien statute, IC 9-22-6 *et seq*.

7. Because Banks is estopped from making claims based on such allegations, he cannot, as a matter of law, establish necessary elements of his claims for theft, conversion, and violation of I.C. 24-5-0.5-3(a)(14).

8. [Indiana Code section] 24-5-0.5-3(a)(14) makes it a deceptive act for a supplier to engage "in the replacement or repair of the subject of a consumer transaction if the consumer has not authorized the replacement or repair, and if the supplier knows or should reasonably know that it is not authorized." Because Banks may not assert that Jamison was unauthorized to make repairs to the Challenger, he cannot establish a claim under I.C. 24-5-0.5-3(a)(14).

12

* * *

11. Banks asserted that Jamison exerted control over the Challenger when he (1) performed body work on it, (2) retained it after Banks demanded its return, and (3) sold it on or about December 29, 2011. According to the definition of "exert unauthorized control," a claim of theft or conversion cannot be based on performing body work on a vehicle. Jamison's retention and sale of the Challenger were necessary to effectuate the foreclosure on his mechanic's lien. Again, because Banks failed to timely challenge the validity of the mechanic's lien sale, he is estopped from basing his claims for theft or conversion on Jamison's actions taken pursuant to the mechanic's lien statute, IC 9-22-6 *et seq*. Banks, therefore, as [a] matter of law, cannot establish the "exert unauthorized control" element which is necessary to a claim of theft and a claim of conversion.

12. Banks also cannot establish the knowledge/intent element of conversion and theft . . . .

13. The culpability element of theft and conversion requires that the accused had the conscious objective or was aware of a high probability that the control exerted was unauthorized. Jamison gave proper notice to Banks of his intention to foreclose the lien and did so in a lawful fashion. The Challenger came into Jamison's possession by means of Banks delivering it to Jamison. Banks admits authorizing work on the Challenger, and making a partial payment to Jamison. Upon Banks' refusal to pay more, Jamison resorted to his legal remedy of lien foreclosure which proceeded unchallenged by Banks, through its conclusion. Banks, therefore, as a matter of law, cannot establish the culpability element of theft or conversion.

14. To the extent that Banks has raised fact issues (e.g. the extent of work authorized, Jamison's billing practices, communications with Jamison predating the lien foreclosure notices, etc.), such issues are immaterial to the facts dispositive of this partial summary judgment. The existence of an issue of fact does not make summary judgment inappropriate. A disputed fact must be <u>material</u> in order to preclude summary judgment. No genuine issues of <u>material</u> fact exist which prevent this partial summary judgment as to Counts I and II of [] Banks['s] First Amended Complaint for Damages.

13

Appellant's App. pp. 11-14 (citations omitted). The trial court entered final judgment on Banks's theft and conversion claims under Indiana Trial Rule 54(B).[11] Banks now appeals.[12]

## I. Introduction

Before proceeding with the legal discussion of this relatively arcane area of the law, it is important to note that neither Banks nor Jamison comes to this court with "clean hands" in the equitable sense. Jamison could have offered, and Banks could have demanded, a written and signed estimate of the work to be performed that included Banks's contact information. That single, simple step would have allowed both parties to avoid the expensive legal journey that has brought them before this court. If, as alleged, Banks visited Jamison's shop in late September or early October of 2011, both parties would have known then that a serious disagreement had arisen, and Banks should have filed a replevin action to set the legal stage for a resolution of that disagreement. Also, if this allegation is true, it is somewhat incredible that Jamison may have continued to work on the car thereafter. It is also somewhat incredible that neither of Jamison's certified mail notices were accepted and opened by Banks. On the other hand, Jamison likewise did not respond to letters sent to him by Banks's attorney prior to the sale of the vehicle. It is this convoluted series of events, and the need to clarify mechanic's lien law for

---

[11] Banks's claim alleging a violation of subsection (a)(5) of the DCSA remains.

[12] Pursuant to Indiana Appellate Rule 41, the Automobile Dealers Association of Indiana, Inc. ("ADAI") has filed an appearance in this case as *amicus curiae* and has filed an appellate brief substantially aligned with Jamison.

others, that motivates us to resolve the dispute between these parties and to offer guidance to others similarly situated in the future.

## II. Summary Judgment

Banks argues that the trial court erred by granting Jamison's motion for partial summary judgment on Banks's claims of theft, conversion, and violation of subsection (a)(14) of the DCSA. When reviewing a trial court's order granting summary judgment, we apply the same standard as that used in the trial court. Kopczynski v. Barger, 887 N.E.2d 928, 930 (Ind. 2008). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." Williams v. Tharp, 914 N.E.2d 756, 761 (Ind. 2009) (internal citations omitted).

The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 637 (Ind. 2012). If the moving party meets this burden, then the non-moving party must designate evidence demonstrating a genuine issue of material fact. Id. "[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." T.R. 56(E). When the defendant is the moving party, the

15

defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. Dible v. City of Lafayette, 713 N.E.2d 269, 272 (Ind. 1999). "Like the trial court, we construe all evidence and resolve all doubts in favor of the non-moving party, so as to avoid improperly denying him his day in court." Miller v. Dobbs, 991 N.E.2d 562, 564 (Ind. 2013) (citation omitted).

Where a trial court enters conclusions of law in granting a motion for summary judgment, as the trial court did in this case, the entry of specific conclusions does not alter the nature of our review. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). We are not bound by the trial court's specific conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

### III. The Mechanic's Lien Statute

Before addressing the parties' arguments, we note that "[m]echanic's liens, although previously recognized at common law, are now creatures of statute." Jones v. Harner, 684 N.E.2d 560, 562 (Ind. Ct. App. 1997). In Indiana, we recognize two types of mechanic's liens related to motor vehicles: (1) a possessory mechanic's lien; and (2) a non-possessory mechanic's lien. Id.; see also Ind. Code §§ 9-22-6-1 through -3 (possessory mechanic's lien statute); Ind. Code §§ 32-33-10-1 through-10 (non-possessory mechanic's lien statute). The main distinction between a possessory lien and a non-possessory lien lies in the means of perfection and foreclosure. Hendrickson & Sons Motor Co. v. Osha, 165 Ind. App. 185, 202, 331 N.E.2d 743, 754 (1975).

16

The first type of mechanic's lien for motor vehicles is the possessory mechanic's lien, which is the type of lien at issue in this appeal. "A possessory lien on a motor vehicle is perfected by retention of possession of the vehicle by the person asserting the lien." Gangloff Indus., Inc. v. Generic Fin. & Leasing, Corp., 907 N.E.2d 1059, 1066 (Ind. Ct. App. 2009) (citing Jones, 684 N.E.2d at 562). A possessory mechanic's lien is foreclosed "by sale without judicial process [and up]on notice to the owner." Hendrickson, 331 N.E.2d at 754.

The second type of mechanic's lien, a non-possessory mechanic's lien, "dispenses with the common law requirement of possession." Jones, 684 N.E.2d at 562. To perfect a non-possessory mechanic's lien, "a person repairing, storing, servicing or furnishing supplies or accessories for motor vehicles must file notice of intention to hold the lien in the office of the county recorder within sixty days after performance of the work or furnishing of the storage." Id. "Like [the possessory mechanic's lien statute], the non-possessory lien statute requires the owner's consent to the repairs or storage before a lien may attach." Id. Foreclosure of a non-possessory mechanic's lien "requires the initiation of judicial foreclosure proceedings within one year of filing" of the intent to hold a lien. Hendrickson, 331 N.E.2d at 754.

In this appeal, the parties argue about the preclusive nature of the possessory mechanic's lien for vehicles statute on Banks's claims of theft, conversion, and violation of subsection (a)(14) of the DCSA. Thus, we turn our attention to this statute at issue, Indiana Code section 9-22-6-2, which became effective on July 1, 2012, and provides:

17

(a) An individual, a firm, a limited liability company, or a corporation that performs labor, furnishes materials or storage, or does repair work on a motor vehicle, trailer, semitrailer, or recreational vehicle *at the request of the person that owns the vehicle* has a mechanic's lien on the vehicle for the reasonable value of the charges for the labor, materials, storage, or repairs.[13]

* * *

(c) If:

    (1) the charges made under subsection (a) or (b) are not paid; and

    (2) the motor vehicle, trailer, semitrailer, or recreational vehicle is not claimed;

not later than thirty (30) days after the date on which the vehicle is left in or comes into the possession of the individual, firm, limited liability company, or corporation for repairs, storage, towing, or the furnishing of materials, the individual, firm, limited liability company, or corporation may advertise the vehicle for sale. The vehicle may not be sold earlier than fifteen (15) days after the date the advertisement required by subsection (d) has been placed or fifteen (15) days after notice required by subsection (e) has been sent, whichever is later.

(d) Before a vehicle may be sold under subsection (c), an advertisement must be placed in a newspaper that is printed in English and of general circulation in the city or town in which the lienholder's place of business is located. If the lienholder is located outside the corporate limits of a city or a town, the advertisement must be placed in a newspaper of general circulation in the county in which the place of business of the lienholder is located. The advertisement must contain at least the following information:

    (1) A description of the vehicle, including make, type, and manufacturer's identification number.

    (2) The amount of the unpaid charges.

---

[13] During the time period at issue in this case, the possessory mechanic's lien statute was codified under Indiana Code section 9-22-5-15, and subsection (a), which is at issue in this appeal, provided:

> An individual, a firm, a limited liability company, or a corporation that performs labor, furnishes materials or storage, or does repair work on a motor vehicle, trailer, semitrailer, or recreational vehicle *at the request of the person that owns the vehicle* has a lien on the vehicle to the reasonable value of the charges for the labor, materials, storage, or repairs.

(emphasis added).

18

(3) The time, place, and date of the sale.

(e) In addition to the advertisement required under subsection (d), *the person that holds the mechanic's lien must notify the person that owns the vehicle and any other person that holds a lien of record at the person's last known address by certified mail, return receipt requested*, that the vehicle will be sold at public auction on a specified date to satisfy the mechanic's lien imposed by this section.

(f) A person that holds a mechanic's lien of record on a vehicle subject to sale under this section may pay the storage, repair, towing, or service charges due. If the person that holds the mechanic's lien of record elects to pay the charges due, the person is entitled to possession of the vehicle and becomes the holder of the mechanic's lien imposed by this section.

(g) If the person that owns a vehicle subject to sale under this section does not claim the vehicle and satisfy the mechanic's lien on the vehicle, the vehicle may be sold at public auction to the highest and best bidder. A person that holds a mechanic's lien under this section may purchase a vehicle subject to sale under this section.

\* \* \*

(emphases added).

Under subsection (a) of the possessory mechanic's lien statute, a mechanic's lien attaches when the mechanic performs services *with the consent of the owner*, and the amount of the lien is for the reasonable value of the charges. Jamison performed various services on the Challenger, but Banks disputes that all of them were done with his consent and disputes the amount of the lien claimed.

## IV. The Trial Court's Application of *Res Judicata*

Banks argues that the trial court erred by granting Jamison's motion for partial summary judgment on his claims of theft, conversion, and violation of subsection (a)(14) of the DCSA. Specifically, Banks argues that the trial court erred by concluding that his

19

claims were barred by the mechanic's lien statute. Banks's main argument on appeal is that the trial court erred by granting Jamison the benefits of the mechanic's lien statute without first determining whether Jamison even possessed a valid mechanic's lien. Banks argues that Jamison did not obtain a valid possessory mechanic's lien because some of the work performed on the Challenger was unauthorized, and as a result, Jamison's retention and sale of the Challenger constituted theft, conversion, and commission of a deceptive act.[14]

Jamison, however, argues that his assertion of a possessory mechanic's lien on the Challenger pursuant to the mechanic's lien statute estopped Banks's claims. Jamison contends that Banks is barred from making a claim premised on the allegation that Jamison was not authorized to perform work on the Challenger or that Jamison was not authorized to hold and foreclose a mechanic's lien on the Challenger. Jamison contends that Banks should have challenged the mechanic's lien before the Challenger was sold, such as filing an action for replevin. In other words, Jamison argues that the possessory mechanic's lien statute requires that a vehicle owner must raise any challenges to an asserted mechanic's lien before the foreclosure sale. He reasons that because the possessory mechanic's lien statute provides a vehicle owner with notice of an asserted lien and foreclosure sale, then the owner must pose any challenge to the mechanic's lien

---

[14] Banks also argues that summary judgment was improper because Indiana Code section 9-22-6-2 did not exist in December 2011 when Jamison sold the Challenger, and he argues that Jamison cannot rely on a non-existent statute to claim that he had a mechanic's lien. Banks, however, fails to acknowledge that the mechanic's lien statute did exist in a substantively similar form at that time under its former codified version, Indiana Code section 9-22-5-15. See note 12, supra.

before the sale or else lose his right to such a challenge.[15]  Jamison contends that, because

Banks "sat on his rights until after the lien was foreclosed and the Challenger was sold[,]"

he is estopped from challenging the validity of Jamison's mechanic's lien.  Appellee's

Br. at 3.  Jamison argues that "[t]o permit Banks to challenge the validity of the

mechanic's lien after it has been foreclosed, and all statutory foreclosure procedures have

been completed, would render the mechanic's lien statute worse than useless."  Id.

Amicus curiae ADAI also argues that Banks should be estopped from challenging

the validity or amount of the mechanic's lien.  Amicus contends that a mechanic's "lien

gives the mechanic an absolute defense to future legal claims[,]" including disputes about

the amount of the lien.  Amicus Curiae Brief at 6.  ADAI also suggests that the

possessory mechanic's lien statute requires an owner to pose any challenge to a

mechanic's lien prior to the sale of the vehicle and that "[a]n owner cannot undercut this

liability safeguard by claiming, at some later date, that authorization existed only for

some of the services."  Id.

The trial court agreed with Jamison's argument that Banks could not challenge

whether Jamison held a valid mechanic's lien unless he did so before the foreclosure sale

of the vehicle.  When entering partial summary judgment in favor of Jamison, the trial

court determined that Banks was estopped from collaterally attacking the validity of

Jamison's mechanic's lien because he did not do so prior to the sale and that, therefore,

---

[15]  If a vehicle owner were required to challenge the mechanic's lien as suggested by Jamison, i.e., after receiving statutory notice of the lien and before the foreclosure sale, the owner would have the latter of fifteen days from the notice published in the newspaper or the notice to the vehicle owner.  See Ind. Code § 9-22-6-2(c)(2) ("The vehicle may not be sold earlier than fifteen (15) days after the date the advertisement required by subsection (d) or fifteen (15) days after notice required by subsection (e) has been sent, whichever is later.").

Banks's claims for theft, conversion, and one of two alleged violations of the DCSA were barred by the possessory mechanic's lien statute.

Turning to this issue of collateral estoppel, we note that "[t]he doctrine of *res judicata* prevents the repetitious litigation of disputes that are essentially the same." Indianapolis Downs, LLC v. Herr, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005) (citing French v. French, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005)), trans. denied. "The principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion, also referred to as collateral estoppel." Indianapolis Downs, 834 N.E.2d at 703.

> When discussing issue preclusion, we have explained:

> [Issue preclusion] bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. Where [issue preclusion] is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. However, the former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. [Issue preclusion] does not extend to matters that were not expressly adjudicated and can be inferred only by argument.

Id. at 704 (internal citations omitted). A determination of whether to allow the application of issue preclusion involves an analysis of the following considerations: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply issue preclusion given the facts of the particular case. Id.

The issue of the validity of Jamison's mechanic's lien—including the extent of Banks's authorization and the reasonable value of any authorized repairs—was not

22

adjudicated in a former lawsuit. The possessory mechanic's lien statute involves the extra-judicial actions of a garage mechanic/repairman who sells a person's personal property, without any requirement to engage or obtain a judgment from a trial court. Indeed, here, Jamison sold the Challenger at a foreclosure sale, but that sale did not involve a lawsuit that provided an opportunity to litigate the issue.

Therefore, issue preclusion does not apply to this case, and the trial court erred when it concluded that Banks was collaterally estopped from challenging the validity of the mechanic's lien. Because issue preclusion does not apply, Banks can challenge the validity and amount of Jamison's claimed mechanic's lien on Banks's vehicle.

Given our conclusion that Banks was not estopped by the sale from challenging Jamison's mechanic's lien, the broader question arises regarding the method and timing allowable for a party to challenge an asserted mechanic's lien on and a foreclosure sale of an automobile. Unlike the statute dealing with the sale of a person's property in other contexts—like the tax sale of a party's real property to satisfy delinquent property taxes—the current possessory mechanic's lien statute and case law on the statute contain no information specifying how or when a party can challenge a mechanic's lien on and the resulting sale of a vehicle. Compare I.C. §§ 9-22-6-1, -2, -3 (current possessory mechanic's lien for vehicles statutes), with Ind. Code § 6-1.1-25-4.6(h) ("A tax deed issued under this section is incontestable except by appeal from the order of the [trial] court directing the county auditor to issue the tax deed filed not later than sixty (60) days after the date of the court's order."), and Ind. Code § 6-1.1-25-16 (listing various ways "[a] person may, upon appeal, defeat the title conveyed by a tax deed"), and Diversified

23

Investments, LLC v. U.S. Bank, NA, 838 N.E.2d 536, 544-45 (Ind. Ct. App. 2005) (explaining that the issuance of a tax deed can be appealed under statute by either an independent action or a Trial Rule 60(B) motion in the same trial court that issued the original tax deed and specifying that these remedies are subject to a sixty-day time frame), trans. denied.

The possessory mechanic's lien statute is meant to ensure that a garage mechanic/repairman is reimbursed for the reasonable amount of the repairs performed at the request of the vehicle's owner. The possessory mechanic's lien statute provides some guidance to a lien holder about the procedure for perfecting and foreclosing on a mechanic's lien. While the statute provides that a vehicle "may be sold at public auction" if the vehicle owner "does not claim the vehicle and satisfy the mechanic's lien on the vehicle," Ind. Code § 9-22-6-2(g), the statute is silent on how or when a person may challenge a possessory mechanic's lien. As we hold below, once proper service of the lien notice is obtained, unless and until the General Assembly provides for an adequate forum for the resolution of conflicting claims, the owner will have an adequate opportunity to challenge the validity of the lien, either through a replevin action or, once notified of the claimed lien, through a declaratory judgment action.

### V. Civil Claims for Theft and Conversion

Although we conclude that issue preclusion does not bar Banks's suit under the DCSA, we do conclude that the trial court properly granted summary judgment in favor of Jamison with regard to Banks's civil claims for theft and criminal conversion.

24

A person who proves the elements of the crimes of theft and criminal conversion by a preponderance of the evidence in a civil suit can recover the costs of the action, reasonable attorney fees, and up to three times the actual damages. Newland Res., LLC v. Branham Corp., 918 N.E.2d 763, 775 (Ind. Ct. App. 2009). "A person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss." Id.; see also Ind. Code § 34-24-3-1.

Both criminal conversion and theft require proof that a person *knowingly or intentionally* exerted unauthorized control over the property of another person. Ind. Code §§ 35-43-4-2, -3. Theft requires the additional proof that the person intended to deprive the owner of the property of any part of the property's value or use. Ind. Code § 35-43-4-2. Pursuant to Indiana Code section 35-41-2-2(a), "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Subsection (b) of the same statue provides that "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." And a person's control over the property of another is "unauthorized" if it is exerted "in a manner or to an extent other than that to which the other person has consented." Ind. Code § 35-43-4-1(b)(2).

In the present case, the undisputed facts establish that Banks hired Jamison to complete some work on Banks's vehicle. While the facts relating to what specific work was authorized by Banks are highly disputed by the parties, the record supports only one reasonable inference: Jamison did not act in bad faith when he sold the vehicle to satisfy what he believed to be a valid mechanic's lien. While Banks may not agree, the

designated evidence indicates Jamison at least believed that all of the work he performed was authorized by Banks and that the amount he charged for his work was reasonable. More importantly, Jamison at least attempted to follow the notice requirements of the mechanic's lien statute, Indiana Code section 9-22-6-2(e), as he understood them by sending Banks notice of the impending sale by certified mail, return receipt requested.

In light of Jamison's good-faith belief that he held a valid mechanic's lien and the fact that he attempted to act in accordance with the notice provisions of the mechanic's lien statute, Jamison's continued possession and ultimate sale of Banks's vehicle were under the color of the law relating to mechanic's liens. Accordingly, no designated evidence reveals any genuine issues of material fact with regard to whether Jamison acted with the requisite *mens rea* to support a claim for theft or conversion. He did not. Therefore, the trial court properly granted summary judgment in favor of Jamison with regard to Banks's claims of theft and conversion.

## VI. Service of Notice of the Claimed Lien

In its summary judgment order, the trial court addressed Banks's contention that he did not receive the required statutory notice of the mechanic's lien and foreclosure sale and concluded that the possessory mechanic's lien statute did not require that Banks actually receive notice and that, under Trial Rule 4.16(a), Banks could not avoid the legal effect of the notice by ignoring it. Although we acknowledge and discuss the latter point a bit later, we disagree that the mechanic's lien did not require that Banks receive notice of the intended and scheduled sale.

The sending of a possessory mechanic's lien notice is governed by statute, not by the trial rules regarding the service of a summons. See Badawi v. Orth, 955 N.E.2d 849, 853-54 (Ind. Ct. App. 2011) (holding that Indiana Trial Rule 4.6 regarding service of a summons did not apply in a tax sale case because the sending of tax sale notices was governed by statute, not trial rules). But while the designated evidence indicates that Jamison believed that the mechanic's lien was valid, as we explain below, the lien was in fact *not* valid because there was no return of service indicating receipt by Banks on the notice sent via certified mail.

The mechanic's lien statute requires that the holder of a mechanic's lien "must notify the person that owns the vehicle . . . at the person's last known address by certified mail, *return receipt requested*, that the vehicle will be sold at a public auction on a specified date to satisfy the mechanic's lien imposed by this section." Ind. Code § 9-22-6-2(e) (emphasis added). Here, while Jamison did send notice of the lien to Banks's business address and his former personal address, via certified mail, return receipt requested, both of these notices were returned *without* proof of receipt.

Without proof of receipt, the notice requirements of the statute were not fulfilled. Otherwise, sending notice to the last known address via first class mail would have been specified by the statute.[16] Simply put, there is no point in requiring that notice be sent by certified mail with return receipt requested without requiring a corresponding proof of receipt by the addressee recipient. Indiana subscribes to the legal maxim, *quod vanum et*

---

[16] We offer no opinion as to whether first class mail service would comply with due process requirements regarding the extra-judicial sale of personal property.

27

*inutile est, lex non requirit*: "[t]he law does not require the doing of a useless thing." Stropes ex rel Taylor v. Heritage House Childrens Ctr., 547 N.E.2d 244, 247 (Ind. 1989). The statutory requirement that notice of the lien and sale be sent to the owner via certified mail is just such a useless thing without the common-sense, additional requirement that return of the certified mail show actual receipt by the owner or the owner's agent.

This is not to say that a vehicle's owner could repeatedly refuse service in order to prevent a lien holder from satisfying the lien by auction, or that certified, return receipt mail should be the only procedurally adequate method of service. Indeed, if a vehicle's owner attempted to avoid service by certified mail, service by private process could be considered adequate notice under the statute. But under the facts and circumstances before us, Jamison provided no proof whatsoever that Banks was given notice of the pending auction. We therefore conclude that there is no genuine issue of material fact with regard the validity of the mechanic's lien; the lien was invalid.[17]

In closing, we observe again that this entire controversy could have been avoided with a simple, signed work order describing and estimating the cost of the work to be performed. Banks could have filed a replevin action immediately upon becoming aware of the serious dispute as to the scope and cost of the work; Jamison should have responded to the letters from Banks's attorney prior to the sale and should have obtained

---

[17] We have interpreted the notice requirement of the statute as it is currently written. See Fraley v. Minger, 829 N.E.2d 476, 492 (Ind. 2005) (noting that the judiciary interprets and applies the law but defers to the legislative branch to decide questions of public policy). We have also interpreted the mechanic's lien statute in the same manner. However, we observe that, in addition to clarifying the means of challenging the validity of a mechanic's lien, our General Assembly could clarify the notice provisions of the mechanic's lien statute. Until then, the owner will have an adequate opportunity to challenge the validity of the lien, either through a replevin action or, once notified of the claimed lien, through a declaratory judgment action

28

clear service of his mechanic's lien notice on Banks before assuming that he could proceed to sell the vehicle pursuant to statute.

## Conclusion

The trial court erred in concluding that Banks's claims were barred by issue preclusion. Summary judgment in Jamison's favor on Banks's civil claims of theft and conversion was proper because Banks failed to demonstrate any evidence that Jamison acted with the requisite *mens rea*. However, Banks may proceed on his claims under the DCSA. Lastly, the underlying mechanic's lien asserted by Jamison was not valid due to the lack of service on Banks.

Affirmed in part, reversed in part, and remanded for further proceedings.

BRADFORD, J., concurs.

PYLE, J., concurs in part and dissents in part.

# IN THE
# COURT OF APPEALS OF INDIANA

TERRY BANKS,                        )
                                           )

    Appellant/Plaintiff,        )
                                           )

               vs.                 )     No. 49A02-1304-PL-362
                                           )

DENNY JAMISON, d/b/a,       )
AUTOMOTIVE HAMMERART    )
                                           )

    Appellee/Defendant.      )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia Ayers, Judge
Cause No. 49D04-1203-PL-12870

**PYLE, Judge, concurring in part, dissenting in part**

I concur with my colleagues on two points: (1) the existence of a possessory mechanics lien does not collaterally estop a party from litigating the validity of the lien, seeking a court order to return the property, or seeking monetary damages for injury to personal property;[18] (2) the mechanics lien was invalid; and (3) Banks may proceed on his claim under the Indiana Deceptive Consumer Sales Act. However, I respectfully dissent on the remaining points because I believe there is a genuine issue of material fact concerning Banks's theft and conversion claims.

---

[18] Indiana Code § 34-11-2-4 provides a two year statute of limitation for claims alleging injury to personal property.

It is a fundamental principle within Indiana's jurisprudence that appellate courts must carefully review decisions granting summary judgment motions to ensure that a party is not denied his day in court. As my colleagues correctly point out, the "facts regarding the *work authorized* to be done on the challenger and the communication regarding that work are *highly disputed*." (emphasis added). As the majority outlined in the Facts and Procedural History section, Banks alleges that he brought the Challenger to Jamison for the installation of certain parts. In addition, he authorized sandblasting and sought "*an opinion* on what further body work, if any, needed to be done . . . ." Appellant's App. P. 70 (emphasis added). Jamison alleges that all work performed was authorized. Clearly, if Jamison is correct, he is entitled to judgment in his favor. However, if Banks's allegations are true, they create an inference from which a jury could quite reasonably infer that Jamison *knowingly* performed work that was not authorized.

This case is ripe for trial. The facts are so highly disputed that a jury is required to observe the facial expressions of the parties, listen to the tenor of their voices, and make a decision regarding their credibility. I believe Banks is being denied his day in court. As a result, because there is a genuine issue of material fact regarding Banks's theft and conversion claims, I would reverse the trial court's grant of summary judgment.