No. 10,217.

## AYERS, GUARDIAN, *v.* SLIFER ET AL.

VENDOR AND VENDEE.—*Fraud.*—*Contract.*—*Sheriff's Sale.*—*Redemption.*— *Deed.*—*Consideration.*—*Agreement.*—O., a weak-minded, confiding old man, owned 300 acres of land, worth $18,000, which had been sold on execution for $2,138.92, subject to a mortgage of $5,000, and the sheriff's certificate was held by L., who, with S. and F., confederated for the purpose of swindling O. out of the land and dividing its proceeds amongst them-

selves. The plan was to prevent O. from redeeming from the sheriff's sale. S., who was wealthy and had the unbounded confidence of O., became his adviser, and professing much friendship and sympathy for O., who was embarrassed financially and also in domestic trouble, and by orally agreeing to purchase 180 acres of the land at a price and terms, for cash, which would afford money in time to redeem, and more than enough also to discharge the mortgage, he prevented O. from making another arrangement to redeem, and then by divers falsehoods and tricks avoided the performance of his agreement until the year for redemption had expired and L. had obtained a sheriff's deed. Then, by like fraudulent devices, he obtained from O. a quitclaim of all his land, upon the agreement that if he succeeded in getting in the title conveyed by the sheriff he would still comply with his parol contract to purchase. Upon learning how he had been cheated, O. brought suit to vacate his deed to S., but was defeated because he had not tendered the money paid to the sheriff.

*Held*, that upon these facts O. would recover from S., as in *indebitatus assumpsit*, the price of the 180 acres as agreed by the oral contract, and the value of the residue of the land less the encumbrances.

From the Decatur Circuit Court.

*J. D. Miller, F. E. Gavin, W. A. Moore* and *B. F. Bennett,* for appellant.

*T. B. Adams* and *L. T. Michener,* for appellees.

HAMMOND, J.—This was an action by the appellant, as guardian of Joseph Owens, a person of unsound mind, against the appellees, to recover the price or value of real estate conveyed by quitclaim deed by said Joseph Owens to the appellee, Philip Slifer.

The transactions upon which the appellant bases his right to recover occurred before Owens was placed under guardianship. A demurrer was sustained to the appellant's complaint. He excepted to this ruling, and his assignment of error in this court requires us to pass upon the question of the sufficiency of his complaint. The complaint is of too great length to admit a copy in this opinion, but the following summary of its contents will exhibit the substantial facts on which the appellant predicates his claim for a recovery:

Joseph Owens was the owner in fee simple of 300 acres of land in Decatur county, of the value of $18,000. It was in-

cumbered by a mortgage of $5,000, executed January 15th, 1877, by him and his wife to a certain mortgage and trust company.   Afterwards, on October 6th, 1877, February 25th, and March 2d, 1878, three several judgments, which became liens upon his real estate, were rendered against him in the Decatur Circuit Court, amounting in the aggregate to about $1,800.   All of his real estate was sold under executions issued on these judgments, on November 16th, 1878, to the appellee Isaac Tindall, for $2,138.92.   Tindall, a few days after the sale, assigned a one-half interest in his certificate of purchase to the appellee Philip Slifer, and soon afterwards Tindall and Slifer assigned said certificate to the appellee John C. F. Leach.   After the sheriff's sale, and long before the expiration of the time for redemption, Owens, with the view of redeeming, commenced efforts to find a purchaser for the whole or part of the land.   He received a verbal offer of $10,000 for the whole of it from one Benjamin McCoy, a man of wealth and responsibility.   Out of this offer, if accepted, the incumbrances were to be first discharged and the residue was to be paid to Owens.   At that time Owens was an old man, of the age of 75 years.   He was in great distress by reason of his financial condition and by domestic affliction, his wife having left him and obtained a divorce and a division of his property.   His mind was feeble and imbecile and his disposition docile and trusting to an extent that incapacitated him from transacting any but the simplest business.   The appellees, knowing of his said mental and financial condition, and of his efforts to preserve a portion of his estate, conspired and confederated together, by certain false representations and promises, to prevent the redemption of his land, and to divide the same among themselves.   Slifer was a man of wealth and a near neighbor, made great pretensions of friendship and had the unbounded confidence of Owens.   The latter confided to him all his secrets and troubles, both in business and family affairs.   He was ignorant of Slifer's interest in the real estate through all these transactions, up to and includ-

ing the execution of the deed hereafter mentioned.   Carrying out the conspiracy entered into by the appellees, Slifer persuaded Owens not to accept McCoy's offer, promising him that he himself would purchase enough of the land to enable Owens to redeem.   About two months before the expiration of the time for the redemption, he arranged verbally with Owens to purchase 160 acres of the land for $7,200, and 20 acres more of the value of $1,000, at a reasonable price, to be fixed by two disinterested neighbors.   This would have paid off the encumbrances and left Owens $1,000 in money and 120 acres of land.   Slifer represented to Owens that before this contract could be carried out it would be necessary to see Tindall, who, as Owens supposed, held the sheriff's certificate of purchase. Slifer, from the averments of the complaint, seems to have impressed Owens with the conviction that an accommodation with Tindall must precede the closing up of his contract of purchase of the land.   As part of the program of deception he went with Owen's son to see Tindall, and requested him to assign the certificate of purchase to him (Slifer).   Tindall at first declined; but, Slifer simulating a great desire and earnestness to assist Owens, Tindall finally pretended to consent to such assignment.   Slifer and Tindall then fixed the following Wednesday as the time to meet Owens at Shelbyville to close up the contract for the purchase of part of the land by Slifer, and for the redemption from the sheriff's sale, or the purchase of the certificate from Tindall.   On the day before the time agreed upon to go to Shelbyville, Tindall sent word that he was sick and unable to attend to business.   Slifer and Owens, a week afterwards, went to Tindall's residence to see him, but he was absent.   They also made a second visit, for the same purpose, but he was again from home.   Leach, Tindall's nephew, was there and informed them that Tindall would not be home for several days.   Slifer told Owens that he could not purchase in Tindall's absence.   Tindall's absence from home on these occasions was part of the plan of deception to cause delay, and to prevent Owens from redeeming

his land. Slifer had no intention of purchasing part of the land. Owens, however, ignorant of the deception being practiced upon him, had no suspicion of Slifer's bad faith. Slifer now represented to Owens that it was not necessary to do anything further until the last day for redemption, and promised that he would on that day have the money for the purchase under his agreement, and that they would then go and see Tindall, and redeem from the sheriff's sale. Owens, confiding in these promises, made no further effort to sell his land or to procure money for the redemption of it. Slifer again put Owens off by telling him that as November 16th, 1879, came on Sunday, the day following would be in time for redemption, and that he had arranged with Tindall to meet at Shelbyville, on November 18th, 1879, to pay the money and redeem the land. He assured Owens that this would be in ample time. Owens, on account of his weak and imbecile mind and his confidence in Slifer, gave full belief to these representations. At the time named Owens and Slifer went to Shelbyville. Tindall failed to meet them. Slifer affected great surprise at Tindall's conduct. Leach on the same day went to the sheriff of Decatur county and procured a sheriff's deed on the certificate of purchase. When Owens, a day or two afterwards, ascertained that the time for redemption was passed, and that a sheriff's deed had been made, he became greatly distressed. While he was in this condition Slifer called on him, two days after the Shelbyville trip, in the evening, after dark, and informed him that he had consulted Ed. P. Ferris, Esq., an attorney at Shelbyville, and that Ferris had advised that the only proper way for Owens to arrange his affairs would be to execute to him (Slifer) a quitclaim for all his land. He informed Slifer that Ferris was going away from home and had directed him (Slifer) to have the papers drawn up. Ferris was Owens' legal adviser—a fact well known to Slifer. These statements in reference to Ferris were false. Slifer had not seen him, nor had he given any such advice. Owens, at Slifer's request, went with him, November 21st, 1879, to Shelbyville,

and was conducted to the law office of John A. Tindall, Esq., a relative of the appellee Tindall. The attorney drew up a quitclaim deed, and Owens executed it, conveying all his real estate (the 300 acres before mentioned) to Slifer—Slifer at the time agreeing that if he succeeded in procuring from Tindall the land, he would comply with his contract of purchase. During all this time Owens was ignorant of any assignment of the certificate of purchase by Tindall, and also ignorant of Slifer having any interest in the matter. The appellees purposely withheld from him the true condition of affairs, the better to carry out their plans of deception to swindle him out of his land. A few days after receiving the sheriff's deed Leach conveyed the land by quitclaim deed to Slifer, and the latter reconveyed 120 acres to Leach. Owens, on learning of the swindle, brought suit against the appellees to set aside his deed to Slifer, but was defeated on account of not having tendered the purchase-money at the sheriff's sale, with interest. He was subsequently, in the proper judicial proceeding, declared to be of unsound mind, and the plaintiff was appointed his guardian. Neither Owens nor the appellant has been able to redeem the land, for the want of means. This action is brought to recover damages.

The above facts, taken from the appellant's complaint, so far as they are well pleaded, are admitted by the appellees' demurrer to be true. The appellees' demurrer being joint, it should have been overruled, if the complaint is good as against either of the appellees. 1 Works Prac., section 531.

The complaint shows with reasonable probability that Owens was prevented by the appellees from redeeming his land within the time fixed by law. The expiration of the statutory period for redemption did not, therefore, deprive him of that right. *Plaster* v. *Burger*, 5 Ind. 232. An agreement between the parties may have the effect to extend the time of redemption beyond the year allowed therefor. *Hughart* v. *Lenburg*, 45 Ind. 498 ; *Spath* v. *Hankins*, 55 Ind. 155. We think, under

the facts stated in the complaint, that Owens, before he executed the deed to Slifer, had, in equity, an unquestionable right of redemption. This being the case, it can not be said, as counsel for the appellees insist, that Owens, in executing the deed to Slifer, did not part with any valuable right. If he did not entirely part with his right of redemption, the deed made such redemption more difficult, because it imposed upon him at least the additional proof of showing that the deed was procured by fraud. The quitclaim deed was, therefore, of benefit to Slifer and prejudicial to Owens. It would have furnished a valuable and sufficient consideration for a contract based upon it. The whole transaction, as developed in the complaint, shows that Owens, when he made the deed to Slifer, expected in some way to be benefited. There is nothing from which it may be inferred that he intended the right conveyed as a gift. Can the appellant, then, in this action recover in damages for the interest in real estate with which Owens divested himself by his deed to Slifer? The complaint shows that the deed was made pursuant to a verbal contract as to 180 acres of the land embraced in it. The execution of a deed upon an oral agreement takes the case out of the statute of frauds. *Curran* v. *Curran,* 40 Ind. 473; *McOuat* v. *Cathcart,* 84 Ind. 567; *Tinkler* v. *Swaynie,* 71 Ind. 562; *Humphrey* v. *Fair,* 79 Ind. 410; *Day* v. *Wilson,* 83 Ind. 463 (43 Am. R. 76); *Stephenson* v. *Arnold, ante,* p. 426.

An action upon account, or what at common law is known as *indebitatus assumpsit,* lies to recover the price or value of land conveyed by deed. *Rinker* v. *Sharp,* 5 Blackf. 185; *Curran* v. *Curran, supra.*

We are of opinion that, under the allegations of the complaint, the appellant is entitled to recover on the conveyance made by Owens to Slifer the price of the land so far as agreed upon, and the value as to the residue, less the encumbrances, which in case of a recovery should be discharged by the party or parties against whom the recovery may be had.

We think there was error in sustaining the demurrer to the appellant's complaint.

Judgment reversed, with instructions to the court below to overrule the appellees' demurrer to the appellant's complaint, and for further proceedings in accordance with this opinion.