

FILED

Nov 05 2020, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

James K. Wisco
Martinsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth Stephens,<br>*Appellant-Defendant,*<br><br>v.<br><br>Richard Tabscott,<br>*Appellee-Plaintiff.* | November 5, 2020<br><br>Court of Appeals Case No.<br>20A-PL-562<br><br>Appeal from the Morgan Superior<br>Court<br><br>The Honorable Peter R. Foley,<br>Judge<br><br>The Honorable Terry E. Iacoli,<br>Special Judge<br><br>Trial Court Cause No.<br>55D01-1902-PL-393 |

**Altice, Judge.**

## Case Summary

[1]     Richard Tabscott entered into an oral agreement to transfer certain real property (the Property) that he owned in Morgan County to Kenneth Stephens. The men later recorded a warranty deed executed by Tabscott, which conveyed the Property to Stephens purportedly in exchange for $16,000. Stephens took

possession of the Property, but he never paid any money to Tabscott and, as found by the trial court, never had any intention to pay. Tabscott eventually filed a complaint against Stephens to, among other things, recover the purchase price for the Property. Stephens asserted the Statute of Frauds as a defense.

[2] Following an evidentiary hearing, the trial court entered judgment in favor of Tabscott, ordering Stephens to pay $16,000 for the Property and $4000 in attorney's fees. Stephens raises a number of issues on appeal, which we consolidate and restate as the following:

> 1. Did the trial court err by refusing to apply the Statute of Frauds?

> 2. Was the award of attorney's fees improper?

[3] We affirm and remand.

## Facts & Procedural History

[4] Stephens began working at Tabscott's longtime place of employment around the beginning of 2017. Shortly thereafter, Stephens needed a place to live, and Tabscott indicated that the Property was unoccupied and available. Stephens moved into the home on the Property in April 2017. Stephens paid no rent but did pay the utility bills and maintain the Property, while Tabscott continued to pay the property taxes. At some point, the parties entered into an oral agreement for Stephens to purchase the Property for, according to Tabscott,

$16,000, but there was a delay in the purchase because Stephens needed to wait for unrelated litigation to be settled.

[5] With the understanding that the other litigation had been resolved, Tabscott and his wife Kim eventually obtained a warranty deed form from Office Depot, and Kim filled out the form. The warranty deed was then executed by Tabscott and notarized on August 22, 2018. The warranty deed expressly indicated that Tabscott granted the Property to Stephens "[f]or valuable consideration in the sum of $16,000.00 the receipt of which is hereby acknowledged."[1] *Appendix* at 62. Stephens acknowledges, however, that he never paid any money to Tabscott for the Property either before or after execution of the deed.

[6] On September 21, 2018, Stephens and Tabscott met at the Morgan County Recorder's Office to record the deed. Stephens was to pay Tabscott at the time, but he arrived with no check or money for Tabscott. Stephens urged Tabscott to proceed with recording the deed and promised to pay him. Based on Stephens's promise, Tabscott recorded the deed. Over the next month or so, Tabscott repeatedly asked Stephens about payment, and Stephens indicated that the money was still tied up. Tabscott then contacted an attorney, who sent a demand letter to no avail.

[7] On February 22, 2019, Tabscott filed the instant complaint against Stephens. He alleged breach of contract, fraud, theft, and conversion and sought to

---

[1] The quoted language was part of the form aside from the handwritten dollar amount.

recover payment from Stephens for the Property or reformation of the deed, as well as treble damages and attorney's fees. In response, Stephens pled the affirmative defense of the Statute of Frauds, among other things.

[8] The matter proceeded to a short bench trial on December 10, 2019. In addition to his own testimony, Tabscott presented the testimony of two coworkers, Daniel Freeman and Jeff Green. Freeman testified that in late 2018 he overheard heated exchanges between Tabscott and Stephens regarding payment and heard Stephens indicate that he was waiting on a check to come in. Similarly, Green testified:

> I just saw, heard [Tabscott] asking for money for the property, and [Stephens] telling him he had the money for the property and pulling up something on his cell phone and showing him some account, bank account or something, and he was telling him that he had the money and that he was waiting to get it.

*Transcript* at 31-32.

[9] Stephens testified in his own defense. He acknowledged that there was an oral agreement regarding the conveyance of the Property and that he never paid any money to Tabscott. Stephens claimed, however, that the consideration for the Property was his act of finding a legal document[2] for Tabscott inside the home

---

[2] Stephens indicated that this document was a deed for property owned by Tabscott in Florida. Tabscott, however, testified that there was no deed for the Florida property. Rather, the documents found by Stephens were in a leather-bound binder that contained a trust and death certificates of his deceased wife's parents. Tabscott acknowledged that Stephens found this but testified that there was no agreement to give him the Property in exchange for this act.

on the Property. Stephens described the volume of paperwork he had to go through as a "hoarder's house full." *Id*. at 42. Stephens testified that he located the document in late 2017 and provided it to Tabscott. Stephens claimed that when the deed for the Property was recorded about a year later, he believed he had satisfied the consideration due and that the $16,000 figure placed on the deed was just an "arbitrary number." *Id*. at 51. Stephens denied having any conversations regarding payment at work and implied that Green and Freeman were making that up because they were friends with Tabscott.

[10] On February 28, 2020, the trial court issued an order, which included specific findings of fact and conclusions. The court found that there was an oral agreement between the parties for Stephens to purchase the Property for $16,000. Pursuant to this agreement and Stephens's promise to pay, Tabscott conveyed the Property to Stephens by warranty deed, but Stephens never paid any of the purchase price. Providing a lengthy legal analysis, the trial court rejected Stephens's argument that a strict application of the Statute of Frauds disposed of Tabscott's claims. In failing to pay the purchase price, the trial court found that Stephens had committed breach of contract, theft, and conversion. The court also found that Stephens had fraudulently induced Tabscott to transfer the Property with no intention to pay the agreed price. Based on its findings and conclusions, the court ordered as follows:

> 1. The Court finds for Plaintiff on all counts alleged;
>
> 2. Judgment shall be entered against Defendant in favor of Plaintiff in the amount of Twenty Thousand Dollars

($20,000.00), said judgment being comprised of the Sixteen Thousand Dollars ($16,000.00) owed for the property and Four Thousand Dollars ($4,000.00) in reasonable attorney fees, in accordance with treble damages.

3. If Defendant is unable to deliver said payment to Plaintiff within ninety (90) days, the Court will issue an Order reforming the deed and transferring the Property back to Plaintiff.

4. If said deed is issued, the judgment will then be reduced to Four Thousand Dollars ($4,000.00).

*Appendix* at 17. Stephens now appeals.

## Standard of Review

The trial court's judgment included sua sponte findings and conclusions pursuant to Indiana Trial Rule 52(A). On review, we will not set aside the trial court's findings or judgment unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses. *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). Further, we will review the issues covered by the findings with a two-tiered standard, asking "whether the evidence supports the findings, and whether the findings support the judgment." *Id*. "Any issue not covered by the findings is reviewed under the general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence." *Id*. at 123-24. Finally, any legal conclusions made by the trial court will be reviewed de novo. *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).

We recognize that Tabscott has not filed an appellee's brief. As a result, we will not undertake the burden of developing arguments on his behalf and will reverse if Stephens establishes prima facie error. *See Duty v. CIT Group/Consumer Fin., Inc.*, 86 N.E.3d 214, 215 (Ind. Ct. App. 2017). Prima facie, in this context, means at first sight, on first appearance, or on the face of it. *Id.* "This standard, however, 'does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required.'" *WindGate Properties, LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018) (quoting *Wharton v. State*, 42 N.E.3d 539, 541 (Ind. Ct. App. 2015)).

## Discussion & Decision

### 1. Statute of Frauds

Stephens's primary argument on appeal is that the trial court erred by not applying the Statute of Frauds to bar Tabscott from attempting to enforce the oral contract. Essentially, he contends that the parties provided contradictory evidence regarding the consideration for the agreement, which was never reduced to writing, and that this is "exactly the situation intended to be avoided by the Statute of Frauds." *Appellant's Brief* at 15.

Ind. Code § 32-21-1-1(b) provides in relevant part:

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or

agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:

****

(4) An action involving any contract for the sale of land.

"The Statute is intended to preclude fraudulent claims that would probably arise when one person's word is pitted against another's and that would open wide the floodgates of litigation." *Jernas v. Gumz*, 53 N.E.3d 434, 446 (Ind. Ct. App. 2016), *trans. denied*. Nevertheless, oral contracts for the conveyance of land are not void, but voidable and, thus, the statute affects only the enforceability of contracts that have not yet been performed. *See id.* at 445. Further, oral contracts for the sale of land "may be enforced by a court of equity under the doctrine of part performance." *Summerlot v. Summerlot*, 408 N.E.2d 820, 828 (Ind. Ct. App. 1980). "Where one party to an oral contract in reliance on that contract has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result, equity will disregard the requirement of a writing and enforce the oral agreement." *Id*.

[15] In this case, Tabscott has by all accounts performed his part of the agreement. The Property has been transferred by warranty deed to Stephens, and Stephens has accepted such transfer. Indeed, Stephens possesses and claims the property as his own by virtue of the warranty deed, which he accompanied Tabscott to record. Under these circumstances, it has long been understood that an action

by the seller of land to recover the purchase price is not foreclosed by the Statute of Frauds. *See e.g. Powell v. Nusbaum*, 136 N.E. 571, 572 (Ind. 1922) ("[The contracts] were taken out of the statutes by the execution of the deed. [Appellee] will not be heard to say that she will not pay the purchase money for the real estate she possesses and is enjoying because the contract through which she received the same was unenforceable."); *Worley v. Sipe*, 12 N.E. 385, 386 (Ind. 1887) ("The sale of the land was perfected and fully executed by the execution of the deed, and the possession given to and accepted by appellant. Nothing remained but the payment of the purchase money. That may be recovered notwithstanding the statute."); *Ayers v. Slifer*, 89 Ind. 433, 439 (1883) ("The execution of a deed upon an oral agreement takes the case out of the statute of frauds."); *Arnold v. Stephenson*, 79 Ind. 126, 128 (1881) ("We accordingly hold that, where the agreement is so far performed that the purchaser acquires a perfect title and full possession of the property, the vendor may recover the stipulated price."); *Tinkler v. Swaynie*, 71 Ind. 562, 567 (1880) ("The consideration for land conveyed, unless itself within the operation of the statute, may always be enforced or recovered, though the contract for the conveyance was verbal.").

[16] A purchaser such as Stephens cannot escape liability for the purchase price on the ground that the Statute of Frauds prohibits the enforcement of verbal contracts for the sale of an interest in land. *See Arnold*, 79 Ind. 126 at 128.

> "When so much of a contract as would bring it within the Statute
> of Frauds has been executed, all the remaining stipulations

> become valid and enforceable, and the parties to the contract regain all the rights of action they would have had at common law." Browne Statute of Frauds, sec. 117. This rule secures justice. Appellee obtained a title by the sheriff's sale, and the most rigid adherence to the requirements of the statute could have given him [not]hing more. … Appellee has secured all he bargained for, and he ought to pay what he promised.

*Id.* at 128-29. If this were not so, the Statute of Frauds could be used as a means of perpetrating a fraud. *Id.* at 129.

[17] In sum, although the oral contract for the sale of the Property was voidable, and all actions to enforce it by specific performance could have been defeated under the Statute of Frauds, there was no inhibition on its execution, which was complete, except for the payment of the purchase money. *See Powell*, 136 N.E. at 573. I.C. § 32-21-1-2 provides: "The consideration that is the basis of a promise, contract, or agreement described in section 1 of this chapter does not need to be in writing but may be proved." *See also Hays v. Peck*, 107 Ind. 389, 8 N.E. 274, 274 (1886) ("It is settled by our decisions that the consideration of a deed may be shown by parol evidence, and that, for this purpose, it may be shown that the grantee verbally agreed, as part of the consideration, to pay an existing incumbrance."). As Tabscott was not seeking to enforce a contract for the sale of land, but to collect the purchase money on account of such sale, the trial court properly permitted him to do so, notwithstanding the Statute of Frauds. *See Powell*, 136 N.E. at 573. Further, the parole evidence presented at trial amply supports the trial court's determination that the agreed-upon

consideration owed by Stephens is $16,000. We affirm the judgment in this amount.

## 2. Attorney's Fees

[18] The trial court awarded Tabscott $4000 in attorney's fees "in accordance with treble damages." *Appendix* at 17. While the basis of this award is not further explained in the order, we note that Tabscott requested attorney's fees and treble damages pursuant to Ind. Code § 34-24-3-1.

[19] Under I.C. § 34-24-3-1, a person who proves the elements of the crimes of theft or conversion by a preponderance of the evidence in a civil suit can recover the costs of the action, reasonable attorney fees, and up to three times the actual damages. *Banks v. Jamison*, 12 N.E.3d 968, 983 (Ind. Ct. App. 2014). Both crimes require proof that a person knowingly or intentionally exerted unauthorized control over the property of another person, with theft requiring additional proof that the person intended to deprive the owner of any part of the property's value or use. Ind. Code §§ 35-43-4-2 (theft), -3 (conversion).

[20] In any such action, criminal intent must be proven. *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012). "It is this mens rea requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt – situations the criminal conversion and theft statutes were not intended to cover." *Id.* Moreover, "[i]t is well established that refusal to pay a debt will not generally support a conversion claim." *Bowden v. Agnew*, 2 N.E.3d 743, 750 (Ind. Ct. App. 2014).

[21] On appeal, Stephens argues that Tabscott failed to establish by a preponderance of the evidence that Stephens knowingly or intentionally exerted unauthorized control over the Property and that Tabscott established, at most, only a mere breach of contract. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). He engages in conduct "'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Further, a person's control over the property of another is "unauthorized" if it is exerted "by creating or confirming a false impression in the other person" or "by promising performance that the person knows will not be performed[.]" I.C. § 35-43-4-1(b)(4), (6).

[22] The evidence supports the trial court's finding that Stephens accepted and encouraged the deed transfer while promising to pay $16,000 to Tabscott but with no intention to do so. In other words, Stephens did not simply breach the agreement; he entered into it fraudulently. His own testimony shows that he never intended to pay any money to Tabscott in exchange for the Property. And Tabscott's testimony, supported in part by Green and Freeman, established that Stephens made promises to pay said money both before and after the deed transfer and that Stephens strung Tabscott along for some time promising payment. Stephens suggests, on appeal, that he believed in good faith that he did not owe Tabscott any money and that his consideration for the Property was satisfied when he located the document related to the Florida property well before the deed transfer. We reject this bald invitation to reweigh

the evidence and assess witness credibility. The evidence supports the trial court's conclusions that Stephens committed theft and conversion.

[23] Having prevailed under I.C. § 34-24-3-1, Tabscott was entitled to an award of reasonable attorney's fees. *See Patricia Ann Brown, C.P.A. v. Brown*, 776 N.E.2d 394, 397-98 (Ind. Ct. App. 2002) (observing that an award of attorney's fees is mandatory under the statute where actual damages have been proven and attorney's fees have been incurred by claimant), *trans. denied*. The amount of such an award was within the trial court's discretion. *See id.* at 398. Here, however, Tabscott presented no evidence regarding his attorney's fees. The only reference he made to the amount of attorney's fees is in his submission of proposed findings and conclusions in which he asked for $5000 "in reasonable attorney fees, in accordance with treble damages." *Appendix* at 79. The trial court awarded $4000 in fees. While this amount might certainly be reasonable upon submission of evidence, we can find no support for it in the record. Accordingly, we remand for the trial court to hold a hearing regarding the reasonable attorney's fees incurred by Tabscott.[3] *See Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 951 (Ind. Ct. App. 2006) (remanding for reconsideration

---

[3] Stephens also challenges the trial court's ability to reform the deed. Reformation is an extreme equitable remedy that is "appropriate only in limited circumstances" including "where there has been a mistake on the part of one party accompanied by fraud or inequitable conduct by the other party." *Peterson v. First State Bank*, 737 N.E.2d 1226, 1229 (Ind. Ct. App. 2000). While we do not find Stephens's arguments on this issue particularly persuasive, we need not address the merits because the trial court has not, in fact, ordered reformation and, thus, the issue is not yet properly before us. *See Appendix* at 17 ("If Defendant is unable to deliver said payment to Plaintiff within ninety (90) days, the Court *will* issue an Order reforming the deed and transferring the Property back to Plaintiff.") (emphasis supplied).

of attorney's fees where party failed to provide sufficient evidence to assist the trial court in determining a reasonable amount of attorney's fees").

[24] Judgment affirmed and remanded.

Riley, J. and May, J., concur.